609 A.2d 307

**Henry S. SABATIER**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.**

**No. 122, Sept. Term, 1991.**

Court of Appeals of Maryland.

July 21, 1992.

Richard D. Rosenthal, Baltimore, for petitioner.

Leonard C. Redmond, III (Louise McB. Simpson, Redmond, Cherry & Burgin, P.A., Baltimore, Steven C. McAliley, West Palm Beach, Fla., on brief), for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

We granted certiorari to determine whether, in light of our earlier opinion in *Sabatier v. State Farm*, 323 Md. 232, 592 A.2d 1098 (1991) (*Sabatier I*), the Circuit Court for Baltimore City (Kaplan, J.), on remand, erred in granting summary judgment against Dr. Henry Sabatier. We conclude that it did and therefore must reverse that judgment.

## I.

### *Sabatier I*

The issue in *Sabatier I* was "whether thermography is a valid diagnostic tool for medical use in the diagnosis and treatment of musculoligamentous injuries, musculoskeletal disease, or nerve root impingement and is therefore compensable as a 'necessary' medical service within the coverage of Maryland Code (1991 Repl.Vol.), Article 48A, § 539 (the Personal Injury Protection or PIP statute)." 323 Md. at 234, 592 A.2d 1098. The issue arose from a number of suits filed by Dr. Sabatier against State Farm Mutual Automobile Insurance Company (State Farm) which had denied payment for thermographic services rendered to a number of its policyholders who were covered for PIP

medical benefits. In response, State Farm filed a counterclaim in the case, seeking a declaratory judgment that thermographic services were not within the coverage of § 539 of Art. 48A.[1]

In focusing upon the thermographic examinations performed by Dr. Sabatier, the court observed that only if it found from the evidence that thermography was a valid diagnostic procedure would it be required to consider whether the procedure was a "necessary" medical service and whether the expense therefor was "reasonable."

At the trial in *Sabatier I*, a number of expert witnesses testified on Dr. Sabatier's behalf that thermography is a reliable, objective, and non-invasive diagnostic test. State Farm, on the other hand, presented a number of expert witnesses who testified that thermography is virtually useless as a diagnostic aid. The testimony on both sides was supplemented by extensive medical literature supporting the respective positions of the parties.

The trial court, upon the voluminous record before it, made detailed findings from the evidence. In assessing the validity of thermography, it concluded that under the so-called *Frye–Reed* standard,[2] a thermogram was not a generally accepted diagnostic test within the relevant medical community for the treatment of musculoligamentous injuries, musculoskeletal disease, or nerve root impingement. Based on this finding, the trial court declared that thermography was an invalid medical procedure. Accordingly, it found in favor of State Farm on Dr. Sabatier's claims for payment for services rendered to the insurer's policyhold-

---

1. This section of the Maryland Insurance Code provides that, unless waived by the insured, every policy of motor vehicle liability insurance shall afford, *inter alia,* medical benefits for the named insured and family members residing in the household who are injured in an automobile accident. The medical benefits under this section are in an amount up to $2,500, and must be for "reasonable" expenses for "[n]ecessary medical ... services."

2. *See Frye v. United States,* 293 F. 1013 (D.C.Cir.1923); *Reed v. State,* 283 Md. 374, 391 A.2d 364 (1978).

ers. The trial court thus found it unnecessary to consider whether thermography was a "necessary" service or involved a "reasonable" expense under § 539.[3]

On appeal in *Sabatier I*, we held that the *Frye–Reed* test of general acceptability of a medical procedure, while providing a helpful framework for assessing the admissibility of the results of a diagnostic procedure, was a standard more stringent than the legislature intended when, in enacting § 539, it formulated the "necessary" and "reasonable" tests for reimbursement for PIP medical services. 323 Md. at 249, 592 A.2d 1098. We said that the *Frye–Reed* test "was deliberately intended to interpose a substantial obstacle to the unrestrained admission of evidence in criminal cases based upon new scientific principles." *Id.* That reasoning, we said, was manifestly inapplicable in determining whether a medical procedure qualifies as "necessary" within the intended coverage of § 539. *Id.* Moreover, we observed that the Maryland PIP statute has a clear remedial purpose and therefore must be afforded a liberal construction. *Id.* at 250, 592 A.2d 1098. Specifically, we said:

"Thus, in focusing upon the wording of § 539, and undertaking to glean the meaning of a 'necessary' medical service, we do not perceive a legislative intent to restrict coverage of any medical procedure simply because the utility of that procedure may be subject to differing opinions in the medical community and is therefore controversial. The only evidentiary standard erected by the Maryland PIP statute for recovery of expenses for necessary medical services is contained in § 544(a) of the Insurance Code, namely, that payments must be made upon 'satisfactory proof' being presented to the insurer."

*Id.*

As to the legislatively intended meaning of the word "necessary" in the PIP statute, we said that it need not be

---

**3.** Dr. Sabatier also sued Government Employees Insurance Company (GEICO) for the same kind of thermographic examinations rendered to GEICO policyholders. These cases were consolidated with the State Farm cases and were decided together.

shown that the medical procedure was one of general acceptance within the relevant medical and scientific community. Rather, we explained that to be a "necessary" medical service within the contemplation of § 539, "it must be shown by satisfactory proof that the use of thermography, as related to the patient's condition, and to the use and availability of other generally accepted and applicable diagnostic tests, has efficacious material value of its own as a diagnostic aid." *Id.* at 255, 592 A.2d 1098. In this regard, we noted that "the legislature did not intend that § 539 be narrowly read to deny payment for a medical procedure simply because a majority of the medical or academic community did not believe that it is a useful diagnostic tool." *Id.* At the same time, we were careful to point out that while thermography may qualify in some circumstances as a "necessary" medical service under § 539, it did not mean that its use, in all circumstances, even though ordered by a physician, will necessarily entitle the insured to PIP benefits. *Id.* In this same vein, we recognized that diagnostic over-treatment, or wrongful treatment of a patient, would constitute improper medical treatment which could not be deemed "necessary." *Id.* Nor, we said, is it solely for the treating physician to decide whether a thermographic examination is a "necessary" service, "or that the standard of proof of 'necessity' is a medical judgment to be made only by those who are trained in and practicing thermography." *Id.* We indicated our agreement with those authorities that have concluded, for purposes of payment of insurance medical benefits, that "medical necessity," or similar policy language, is an objective standard to be applied by the trier of fact and is not a delegation to the treating physician. *Id.*

Giving due regard to the right of the trial judge, as trier of fact, to discount the expert testimony of any of the witnesses, or conclusions reached in the medical literature, we noted that the question before the trial judge was not one of fact as to the fundamental validity of thermography under the *Frye–Reed* standard. Rather, we said, the question was whether thermography was a "necessary" medical

service under the less restrictive, legislatively intended application of § 539's formulation of a medically "necessary" service. *Id.* at 255–56, 592 A.2d 1098. Otherwise stated, we said that

> "the issue is not a factual determination, applying the *Frye–Reed* standard, of the validity or invalidity of thermography but whether, under § 539, the thermographic examinations involved in these cases were, in view of the medical condition of each patient, a necessary service within the coverage of the statute. If, without regard to the *Frye–Reed* standard of general acceptability, the trier of fact concludes that some or all of these thermographic examinations were totally devoid of any diagnostic value, then they could not be deemed 'necessary' under § 539."

*Id.* at 256, 592 A.2d 1098.

We, therefore, vacated the judgment of the circuit court and remanded the case for further proceedings "to determine whether the thermographic examinations performed in the consolidated cases constitute 'necessary' medical services under [the statute] and, if so, whether the charge for such examinations was 'reasonable' within the meaning of the statute." *Id.* at 256–57, 592 A.2d 1098.

## II.

### *Sabatier II*

On remand to the circuit court, State Farm moved for summary judgment. It pointed out that in *Sabatier I,* we held that the *Frye–Reed* general acceptability standard was not applicable in the context of the Maryland PIP statute; that we further held that to be a "necessary" medical service within the contemplation of § 539, the proper test was whether it was satisfactorily shown "that the use of thermography, as related to the patient's condition, and to the use and availability of other generally accepted and applicable diagnostic tests, has efficacious material value of its own as a diagnostic test"; and that, based upon the trial judge's findings of fact in *Sabatier I,* it was uncontroverted

that thermography did not satisfy this standard and consequently it was entitled to summary judgment as a matter of law.

At the hearing on the summary judgment motion, the trial court noted Dr. Sabatier's position that the court should not make the determination of "necessity" under the PIP statute on a "global" basis but should do so only on a case-by-case basis. In response, the court said that it recognized that its determination of necessity under § 539 must be based on the legislative, more liberal standard required by the PIP statute, but that that did not require him to proceed on a case-by-case basis. Rather, the court said that if, in applying that standard, it concluded that thermography had no medical validity at all, it could not be a necessary medical service under any test or standard. The court believed that based on the evidence adduced in *Sabatier I,* it was appropriate that it take a global view of thermography. In doing so, it opined that whether a thermographic examination was used adjunctively, or individually with no other test, it was in either instance "totally devoid of diagnostic value." Accordingly, the court entered summary judgment against Dr. Sabatier.

On appeal to this Court (*Sabatier II*), State Farm, in support of the grant of summary judgment, reasserts its basic premise, namely, that the evidence showed that thermography under any test is not a valid diagnostic tool and thus could not in any circumstances be a "necessary" medical service under § 539. It maintained that the trial court reevaluated the evidence under the correct standard and properly concluded as a matter of law that thermography had no diagnostic value. A case-by-case determination, according to State Farm, is therefore unnecessary since no need exists to examine the medical condition of each patient to determine that a totally worthless technique was completely devoid of diagnostic value.

As we earlier noted, in *Sabatier I,* we set forth the controlling law of the case to be applied on remand by the trial judge. It did not permit a summary judgment determi-

nation on a global basis that, in all instances and in all circumstances, thermographic examinations were totally worthless as a diagnostic tool. We deemed it essential that, in considering whether satisfactory proof was shown by Dr. Sabatier that the thermographic examinations constituted a "necessary" medical service under § 539, the trial court take into account the medical condition of each patient in determining whether the use of thermography had "efficacious material value of its own as a diagnostic aid." 323 Md. at 255, 592 A.2d 1098. In other words, we viewed the matter as a mixed question of law and fact as to whether, within the meaning of the statute, a thermographic examination was a necessary medical service in the circumstances of the individual patient's condition. In this regard, it is more than likely that the nature of some soft tissue injuries subjected to thermographic examinations may permit a "grouping" of cases to facilitate disposition of more than one case at a time. In any event, we conclude that the summary judgment in this case was inappropriate and must be vacated.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THE CIRCUIT COURT AND IN THIS COURT IN SABATIER I TO BE DIVIDED ONE–HALF AS TO STATE FARM AND GEICO AND ONE–HALF AS TO DR. SABATIER. ALL COSTS IN SABATIER II TO BE PAID BY STATE FARM AND GEICO.