854 A.2d 879

**Richard NESBIT**

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY.**

**No. 131, Sept. Term, 2003.**

Court of Appeals of Maryland.

July 23, 2004.

68

Todd L. Schuler (Mark C. Miller, William J. Blondell, Jr., Chtd., Baltimore, on brief), for petitioner.

Frank F. Daily (Cynthia Dietz Spirt, Law Offices of Frank F. Daily, P.A., Hunt Valley, Andrew Janquitto, Mudd, Harrison & Burch, Towson, on brief), for respondent.

James S. Wilson, Joan F. Brault, Brault, Graham, Scott & Brault, LLC, Rockville, brief of Amicus Curiae Property Casualty Insurers Association of America, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE, JJ.

GREENE, J.

On February 7, 2003, Richard Nesbit ("Nesbit") was injured in an automobile accident. Nesbit attempted to recover personal injury protection ("PIP") benefits from his insurer,

Government Employees Insurance Company ("GEICO"). GEICO rejected the PIP claim because Nesbit had no PIP coverage, having signed a PIP waiver on June 15, 1998. Nesbit sued GEICO in the District Court of Maryland sitting in Baltimore County. The parties tried the case on July 3, 2003, and the Court entered judgment on behalf of GEICO. Nesbit noted a *de novo* appeal in the Circuit Court for Baltimore County on August 7, 2003. The Court held the trial on December 1, 2003. Nesbit did not appear for the trial, but his attorney attended. After taking testimony and hearing arguments, the Court entered judgment in favor of GEICO. Nesbit petitioned this Court for a writ of *certiorari*, which we granted on March 11, 2004.

The issue before this Court is whether Section 19–506 of the Insurance Article of the Maryland Code voids a PIP waiver that (by its own terms) remains effective until withdrawn by the insured in writing, if the insured's policy has been renewed and changed since the signing of the PIP waiver. We hold that such a contract is permissible under Maryland law.

Nesbit also questions whether the waiver form used by GEICO complied with the statute and whether the Court erred by finding that he had received a three-page waiver form from GEICO even though GEICO only produced the signed signature page of the form at trial. We hold that the form used complied with the statute and that the Circuit Court did not err in finding that Nesbit had received the whole form.[1]

## FACTS

At the time of Nesbit's accident (February 2003), he maintained an automobile insurance policy with GEICO. The

---

1. Nesbit frames the questions before the Court as:

 Is a purported waiver of PIP benefits, signed by an insured, for an insurance policy five years earlier valid for an insurance policy with new terms and conditions?

 Is a purported waiver of PIP benefits, which consists of the third page of an allegedly three page document that fails to comply with the provisions of Md. Ins.Code Ann. § 19–506, a valid waiver?

renewal policy had issued on October 11, 2002, and covered the period from November 27, 2002, through May 27, 2003. Nesbit obtained his original policy with GEICO in 1998. On June 15, 1998, Nesbit signed a waiver of PIP benefits, which included the following language:

> I affirmatively waive the benefits required by section 539 of Article 48A of the Maryland Insurance Code (PIP). I understand and agree that this waiver of coverage shall be applicable to the policy or binder of insurance described below, on all future renewals of the policy and on all replacement policies unless I notify the company in writing to the contrary, with the effective date of such change being no earlier than the receipt date by the company of my written notification.

Nesbit's original policy with GEICO covered a 1992 Honda and a 1992 Pontiac. At the time of the accident, Nesbit's policy covered the 1996 Dodge Caravan that was involved in the accident and a 2000 Toyota.

As noted previously, Nesbit did not appear for the trial in Circuit Court. He was, however, represented by an attorney who agreed to stipulate to certain facts. The attorneys stipulated to the fact that Nesbit was insured by GEICO at the time of the accident, that Nesbit was injured in the accident, that Nesbit signed the signature page of the PIP waiver on June 15, 1998, and that Nesbit returned that signed page to GEICO. Nesbit's attorney presented no witnesses. He argued that the initial PIP waiver signed in 1998 was no longer effective because Nesbit had renewed and changed his policy to include two different vehicles than were originally covered and the waiver form itself did not comply with the statutory requirements.

GEICO called Alice Hinkle ("Hinkle"), the underwriting and sales manager for GEICO, to testify. Hinkle testified that GEICO routinely sends out a three-page PIP waiver notice form to insureds, the third page being the signature page admitted to by Nesbit. The first two pages contain information about PIP including who it covers, how much the premi-

ums are with full PIP coverage, how much the premiums are if PIP is waived, the minimum coverage benefits, what losses it covers, and for whom coverage can and cannot be waived. GEICO did not produce the original or a copy of the form actually sent to Nesbit. Rather, GEICO offered a copy of a sample form into evidence, which was received. Hinkle testified that such a form would have been sent to Nesbit and that GEICO only retained the signature page—the portion of the form that Nesbit returned to them.

Hinkle also testified that the PIP waiver form used by GEICO has been approved by the Maryland Insurance Administration. In support of this testimony, GEICO introduced a letter from GEICO to the Maryland Insurance Commissioner regarding the approval of various GEICO forms, including the Waiver of Personal Injury Protection form, which was attached to the letter. The letter, which was received as an exhibit, included a June 7, 1994, stamp from the Maryland Insurance Administration that says "APPROVED."

Hinkle testified that since the time that Nesbit signed the PIP waiver, his policy had changed to include two different vehicles than were originally covered. She also acknowledged that the rate that would have been paid for PIP after the policy changed would have been different than the PIP rate that would have been paid originally. This change was based on a number of factors, including the fact that the vehicles covered were different.

As previously noted, Nesbit did not testify. There is no evidence that he ever notified GEICO in writing or otherwise that he intended to revoke his PIP waiver. Neither is there any evidence that he sought to obtain PIP coverage at any time after the initial waiver or that he ever paid for the PIP coverage he chose to waive in 1998. Hinkley testified that the declarations page received by Nesbit in October of 2002 showed that he had "option A" for PIP coverage which, as explained by that document, meant that $2,500 of PIP benefits had been waived by the signing of the PIP waiver.

At the conclusion of the trial, the judge found that Nesbit waived his PIP coverage and that the form "clearly and concisely explains in the right type ... the effect of the waiver, the nature and extent and cost of coverage that would be provided. It did all of that. And as I said, he signed the form and sent it back and the evidence is that the form that was used has been approved by the Maryland Insurance Commission." Regarding Nesbit's legal arguments, the trial judge stated:

> I'll incorporate what I said earlier which brings us up to this point and the argument that the insurance companies must, in this case GEICO, tell the insured each renewal period that they can waive or not waive PIP. I don't believe the statute requires the companies to do that. . . . Why MAIF is singled out in these two statutes, I do not know the answer to that, but I do know that the form that was sent that has been approved by the Commissioner to, in this case Mr. Nesbit, told him that this waiver was applicable to all future renewals and all replacement policies unless Mr. Nesbit notified the company in writing to the contrary.

The Circuit Court entered judgment in favor of GEICO. This appeal followed.

## DISCUSSION

■ Md. Rule 8–131(c) provides that when an action has been tried without a jury, "the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." The deference shown to the trial court's factual findings under the clearly erroneous standard does not, of course, apply to legal conclusions. When the trial court's order "involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review." *Walter v. Gunter*, 367 Md. 386, 392, 788 A.2d 609, 612 (2002).

■■■■ When interpreting a statute, we must determine the intent of the legislature in enacting it. *Mayor & City of Baltimore v. Chase,* 360 Md. 121, 128, 756 A.2d 987, 991 (2000). The rules governing the search for legislative intent are settled. *Id.* In *Chesapeake and Potomac Telephone Co. of Maryland v. Director of Finance for Mayor and City Council of Baltimore,* 343 Md. 567, 683 A.2d 512 (1996), we stated:

[W]e begin our analysis by reviewing the pertinent rules of [statutory construction]. Of course, the cardinal rule is to ascertain and effectuate legislative intent. To this end, we begin our inquiry with the words of the statute and, ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our inquiry there also.

*Chesapeake and Potomac,* 343 Md. at 578, 683 A.2d at 517 (internal citations omitted). We assign words their ordinary and natural meaning when interpreting statutory language. *Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128, 1131 (1998), quoting *Gardner v. State,* 344 Md. 642, 647–48, 689 A.2d 610, 612–13 (1997).

■■■ Section 19–505(a) of the Insurance Article of the Md. Code requires "each insurer that issues, sells, or delivers a motor vehicle liability insurance policy in this State" to provide PIP coverage, unless that coverage is waived in accordance with § 19–506 of the Insurance Article. Md.Code (1997, 2002 Repl.Vol.), § 19–505(a) of the Insurance Article. Section 19–506(a)(1) states that "[i]f the first named insured does not wish to obtain the benefits described in § 19–505 of this subtitle, the first named insured shall make an affirmative written waiver of those benefits." Md.Code (1997, 2002 Repl. Vol.), § 19–506(a)(1) of the Insurance Article. Section 19– 506(c) notes that a waiver made under this section is not effective "unless, prior to the waiver, the insurer gives the first named insured written notice of the nature, extent, and cost of the coverage described in § 19–505 of this subtitle." Md.Code (1997, 2002 Repl.Vol.), § 19–506(c) of the Insurance Article. Finally, Section 19–506(e) states that "[a] waiver made under this section by a person that is insured continu-

ously by the Maryland Automobile Insurance Fund is effective until the waiver is withdrawn in writing." Md.Code (1997, 2002 Repl.Vol.), § 19–506(e) of the Insurance Article.

Nesbit argues that because Section 19–506(e) only mentions waivers made by people who are insured continuously by the Maryland Automobile Insurance Fund (MAIF), waivers made by people insured continuously by other insurance companies do not remain effective until withdrawn in writing. Nesbit asserts that such waivers cease to be effective if the insured's policy changes in other respects.[2] Nesbit is unable to provide any statutory support for that argument because Section 19–506 is silent as to when a PIP waiver of someone insured continuously by a company other than MAIF ceases to be effective. To assist in interpreting this silence, Nesbit suggests that we compare Section 19–506(e) with Section 19–510(e).

Section 19–510 covers waivers of uninsured motorist coverage and provides in pertinent part, "[a] waiver made under this section by a person that is insured continuously by an insurer or by the Maryland Automobile Insurance Fund is effective until the waiver is withdrawn in writing." Md.Code (1997, 2002 Repl.Vol.), § 19–510(e) of the Insurance Article. Nesbit argues that because the Legislature included all insurers in Section 19–510(e), and only mentioned MAIF in Section 19–506(e), they must have intended to exclude all insurers but MAIF from the provisions of Section 19–506(e). In light of the plain language and legislative history of Section 19–506, this argument fails and the comparison to Section 19–510(e) becomes unnecessary.

Paragraph (c) of Section 19–506 is the only part of that section that discusses when a waiver provided by *any* insurer is ineffective. Md.Code (1997, 2002 Repl.Vol.), § 19–506(c) of

---

**2.** In particular, Nesbit notes that when his policy changed (to remove certain insured vehicles from the policy and to add different vehicles to the policy) the premium costs for PIP would have been different. He argues that GEICO should have been required to notify him of those possible premium changes in order for his waiver to remain effective.

the Insurance Article. As already noted, that section provides that a waiver is ineffective unless prior to the waiver, the insurer gives "written notice of the nature, extent, and cost of the coverage described in § 19–505 of this subtitle." [3]

█ By contrast, paragraph (e) of Section 19–506 plainly discusses MAIF *only*. To interpret the silence regarding other insurers in accordance with Nesbit's suggestion is illogical. While it is true that the PIP statute "has a clear remedial purpose and therefore must be afforded a liberal construction," *Sabatier v. State Farm*, 327 Md. 296, 299, 609 A.2d 307, 309 (1992) (citing *Sabatier v. State Farm*, 323 Md. 232, 249, 592 A.2d 1098), we have held that the Court must take a "commonsensical" approach when construing a statute. *Board of Trustees of the Maryland State Retirement and Pension Systems v. Harry R. Hughes*, 340 Md. 1, 7, 664 A.2d 1250, 1253 (1995) quoting *Frost v. State*, 336 Md. 125, 137–38, 647 A.2d 106, 112 (1994). We must seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense. *Id.* Even if one could interpret paragraph (e) to mean that a waiver made by a person insured continuously by a company other than MAIF becomes ineffective in some way other than when it is "withdrawn in writing," the language of the statute makes no suggestion about what that other way would be.

█ Nesbit suggests that a waiver made by a person insured continuously by a company other than MAIF becomes ineffective when the policy is renewed and vehicles are removed and added to the policy, causing a difference in PIP premium costs. There is absolutely nothing in the language of the statute that requires or even suggests such an outcome. We will not "divine a legislative intention contrary to the plain language of a statute or judicially insert language to impose exceptions, limitations or restrictions not set forth by the legislature." *Langston v. Langston*, 366 Md. 490, 515, 784

---

3. As will be discussed later in this opinion, GEICO provided such notice to Nesbit.

A.2d 1086, 1100 (2001). Similarly, "[w]e neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in a forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Taylor v. Nations-Bank*, 365 Md. 166, 181, 776 A.2d 645, 654 (2001). Nothing in Section 19–506 prohibits an insured and an insurance company from entering into a contract that includes a PIP waiver containing an automatic renewal provision. As a general rule, " 'parties are free to contract as they wish.' " *Van Horn v. Atlantic Mutual Insurance Company*, 334 Md. 669, 695, 641 A.2d 195, 207 (1994) (citing *State Farm v. Nationwide*, 307 Md. 631, 643, 516 A.2d 586, 592 (1986)).[4] The waiver signed by Nesbit included this statement: "I understand and agree that this waiver of coverage shall be applicable to the policy or binder of insurance described below, on all future renewals of the policy and on all replacement policies unless I notify the company in writing to the contrary. . . ." The fact that the policy renewals and changes would have caused a difference in the cost of the PIP coverage does not change what Nesbit agreed to when he signed the PIP waiver.

While we believe the plain language (and lack of language) in Section 19–506 fairly resolves the issue in this case, we do not read statutory language "in isolation or out of context [but construe it] in light of the legislature's general purpose and in the context of the statute as a whole." *Forbes v. Harleysville Mutual*, 322 Md. 689, 696–97, 589 A.2d 944, 947–948 (1991); *see also Ridge Heating, Air Conditioning & Plumbing v. Brennen*, 366 Md. 336, 350–51, 783 A.2d 691, 699 (2001); *State v. Thompson*, 332 Md. 1, 7, 629 A.2d 731, 734–

---

4. Of course, any part of an insurance contract that is contrary to Maryland's public policy "as set forth in any statute, is invalid and unenforceable." *Stearman v. State Farm*, 381 Md. 436, 441, 849 A.2d 539, 542 (citing *Jennings v. Government Employees Insurance Company*, 302 Md. 352, 356, 488 A.2d 166, 168 (1985)). In the case at bar, the language of the statute itself certainly does not indicate a public policy that would prohibit a contract providing for an automatic renewal of a PIP waiver. Moreover, as will be discussed further in the opinion, there is nothing in the legislative history that indicates such a policy.

735 (1993); *Atkinson v. State,* 331 Md. 199, 212, 627 A.2d 1019, 1027 (1993). Context may include legislative history and " 'other material that fairly bears on the fundamental issue of legislative purpose or goal.' " *GEICO v. Insurance Commissioner,* 332 Md. 124, 132, 630 A.2d 713, 717 (1993) (quoting *Kaczorowski v. Mayor & City Council of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 632–633 (1987)). Moreover, when a statute is silent as to a particular issue, it is appropriate for the Court to consider legislative history. *See Jones v. Prince George's County,* 378 Md. 98, 111, 835 A.2d 632, 639–640 (2003) (regarding a wrongful death statute that was silent as to standing and turning to the history of the statute and general Maryland choice of law principles for guidance); *Comptroller of Treasury v. Clyde's of Chevy Chase, Inc.,* 377 Md. 471, 513, 833 A.2d 1014, 1039 (2003) (regarding tax statute language that was ambiguous and silent as to some matters and relying on legislative history and case law to resolve the question at hand). With these principles in mind, we turn to a review of the legislative history of Section 19–506(e).

Section 539 of Article 48A of the Insurance Code was the predecessor to the current Section 19–506 of the Insurance Article. The Bill Analysis for House Bill 616 (which modified Section 539(f) of Article 48A in 1992 to include the language regarding waiver renewals of MAIF policies) sheds light on the question before us. In particular, the Bill Analysis states that the bill "clarifies that a waiver of PIP coverage under a policy issued by [MAIF] shall continue in effect until withdrawn in writing provided that the vehicle[ [5]] has been continuously insured with MAIF by the person making the waiver." In addition, the Bill Analysis described the issue to be dealt with by this change to the statute as follows:

---

5. In order to avoid any possible confusion on the matter, we note that the usage of the word "vehicle" in this context was incorrect. Instead, as is made clear by the language of the statute itself, the word used should have been "persons." The statutory language of section 539(f)(4) stated: "A waiver made under this subsection by *persons* continuously insured by the Maryland Automobile Insurance Fund shall be construed to be effective until withdrawn in writing." Md.Code (1957, 1992 Cum.Supp.), Art. 48A § 539(f)(4) (emphasis added).

Currently, the Insurance Division has interpreted a waiver of PIP coverage to be effective if the policy holder renews the policy and does not affirmatively withdraw the waiver. However, because MAIF policies generally run for 1 year and technically cannot be renewed, the policy holder must waive PIP each time a MAIF policy is rewritten as a new policy.

It is clear that the Legislature passed this predecessor to Section 19-506(e) for the purpose of allowing MAIF to do what the other insurance companies had already been doing, that is, operating as if waivers of PIP benefits remained effective until they have been affirmatively withdrawn by the insured. Because we know that the Legislature knew that the other insurance companies were already engaging in this practice, it is nonsensical to argue that the amendment giving MAIF the same ability was intended to prohibit other un-named insurance companies from continuing to engage in the practice.

Earlier and subsequent legislation can be consulted to determine legislative intent. *Tracey v. Tracey*, 328 Md. 380, 385–387, 614 A.2d 590, 593–594 (1992). Therefore, as further evidence of the Legislature's intent regarding Section 19-506(e), we note that the General Assembly passed a new amendment to the section in the 2004 session. Senate Bill 236, passed unanimously by both the House and Senate and signed by the Governor, changed paragraph (e) to read: "A waiver made under this section by a person that is insured continuously by the Maryland Automobile Insurance Fund *or the insurer* is effective until the waiver is withdrawn in writing." (Emphasis added.) The Fiscal and Policy Note of Senate Bill 236 provides that the bill has no effect except that it "codifies the Maryland Insurance Administration's current interpretation of the law." We agree with the Insurance Administration's current interpretation of the law—that a PIP waiver made by a person insured continuously by the insurer remains effective until withdrawn in writing. As discussed in *Washington Suburban Sanitary Comm'n. v. C.I. Mitchell & Best Co.*, 303 Md. 544, 495 A.2d 30 (1985), legislative acquies-

cence to the administrative construction of a statute "gives rise to a strong presumption that the administrative interpretation is correct." *Washington Suburban Sanitary Comm'n.,* 303 Md. at 559, 495 A.2d at 37 (citing *Valentine v. Bd. of License Comm'rs of Anne Arundel Co.,* 291 Md. 523, 435 A.2d 459 (1981)).

 In addition to Nesbit's contention that the waiver in this case is ineffective because his policy has changed [6] since the initial signing of the waiver, he argues that the waiver is ineffective because the form used by GEICO does not comply with Section 19–506(d) of the Insurance Article. We disagree. Section 19–506(d) provides:

(1) A waiver made under this section shall be made on the form that the Commissioner requires.

(2) The form may be part of the insurance contract.

(3) The form shall clearly and concisely explain in 10 point boldface type:

(i) the nature, extent, and cost of the coverage that would be provided under the policy if not waived by the first named insured;

(ii) each effect of a waiver as stated in subsection (b) of this section;

(iii) that a failure of the first named insured to make a waiver requires an insurer to provide the coverage described in § 19–505 of this subtitle;

(iv) that an insurer may not refuse to underwrite a person because the person refuses to waive the coverage described in § 19–505 of this subtitle; and

(v) that a waiver made under this section must be an affirmative written waiver.

Md.Code (1997, 2002 Repl.Vol.), § 19–506(d) of the Insurance Article. As previously noted, the form provided by GEICO contains information regarding who is covered by the waiver,

---

**6.** We disagree with the factual premise that the policy itself changed. In actuality, only the coverage changed when vehicles were removed from the policy and other vehicles were added.

how much the premiums are with full PIP coverage and how much the premiums are if PIP is waived, what occurs if PIP is not waived, the minimum coverage benefits, what losses it covers, for whom coverage can and cannot be waived, and a statement that if the insured decides not to sign the waiver, the insurance company may not refuse to cover the insured. Furthermore, the Maryland Insurance Commissioner specifically approved the waiver in question. As we recently stated in *O'Connor v. Maryland,* —— Md. ——, —— A.2d —— (2004),

> An administrative agency's interpretation and application of the statute which the agency administers "should ordinarily be given considerable weight by reviewing courts." *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 69, 729 A.2d 376, 381 (1999). "[T]he expertise of the agency in its own field should be respected." *Id.*

*O'Connor v. Maryland,* —— Md. at ——, —— A.2d at —— (2004) [slip op. at—]. Again, we agree with the interpretation of the Insurance Commissioner on this matter. It is clear that the three-page waiver form provided by GEICO satisfies the requirements of Section 19–506(d).[7]

 Nesbit also argues that the Circuit Court erred by finding that he had signed a proper waiver in this case in view of the fact that GEICO only produced the last page of an "allegedly" three page document into evidence. As stated previously, we will not reverse the trial court on questions of evidence unless the factual findings are clearly erroneous. Md. Rule 8–131(c). Furthermore, we will give due regard to the Court's opportunity to judge the credibility of the witnesses. *Id.* GEICO presented the testimony of its underwriting and sales manager, Hinkle, who testified that it was

---

7. As noted previously, we reject Nesbit's argument that GEICO was required to notify him of PIP premium changes that would occur when his policy was renewed and changed. GEICO notified Nesbit in accordance with section 19–506(d) originally and Nesbit agreed that the waiver would remain effective "on all future renewals of the policy and on all replacement policies" unless he notified GEICO in writing to the contrary. Neither paragraph (d) of Section 19–506 nor any other paragraph of Section 19–506 requires GEICO to send out a new notice of PIP costs every time a policy is renewed or changed.

GEICO's policy to send the three-page PIP waiver notice form to insureds, the third page constituting the signature page admitted to by Nesbit. Hinkle also testified that she only had the signature page from Nesbit to offer because GEICO does not keep copies of the actual waiver form sent to the insureds. Rather, they only keep the page that is returned by the insureds-the signature page. The Court accepted a blank sample form into evidence, without objection from Nesbit.[8] Based on the review of the sample form, Hinkle's testimony, and the signature page signed by Nesbit, it was not clearly erroneous for the Court to determine that Nesbit had signed a valid PIP waiver.

In conclusion, we hold that Section 19–506(e) of the Insurance Article does not invalidate a PIP waiver like the one in this case, stating that it remains effective until withdrawn in writing. In addition, we hold that the waiver form used in this case complies with Section 19–506(d) of the Insurance Article and that the proof offered by GEICO at trial regarding the waiver was sufficient evidence on which to decide that Nesbit had signed a valid waiver of PIP benefits.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. APPELLANT TO PAY COSTS.

---

8. Nesbit had objected to the entry of a sample form with the premium amount filled in by GEICO, but did not object to the form that listed all the information described above, without any actual cost numbers.