*Kaiguang Xu v. Mayor and City Council of Baltimore*, No. 0966, September Term, 2020. Opinion by Kenney, J.

**EMINENT DOMAIN – PROCEEDINGS TO TAKE PROPERTY AND ASSESS COMPENSATION – NATURE AND FORM OF PROCEEDING**

Rule 12-207(a) ordinarily requires a jury trial in condemnation cases in the absence of a written and mutual waiver submitting the case for a bench trial. Rule 1-101(b) makes the rules of civil procedure in Title 2 apply in general to condemnation proceedings, except as "otherwise specifically provided or necessarily implied." Because Rule 12-207(a) specifically provides for a mutual and written election to hold a bench trial, Rule 2-325, which ordinarily requires a party to file a written demand for a jury trial, does not apply.

**EVIDENCE – OPINION EVIDENCE IN GENERAL – DETERMINATION OF QUESTIONS OF ADMISSIBILITY – PARTICULAR SUBJECTS OF OPINION EVIDENCE – VALUE – REAL PROPERTY**

A landowner is prima facie competent to express their opinion as to their property's value without qualification as an expert in a condemnation proceeding. And if landowners are prima facie competent to express their opinion as to value without being qualified as an expert, it follows that they should be allowed to testify as to how they arrived at that opinion. In the absence of clear discovery rule violations, preventing an owner from providing their opinion as to the value of their property and how they reached it is ordinarily error and thus an abuse of discretion.

Circuit Court for Baltimore City
Case No. 24-C-18-004870

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0966

September Term, 2020

_____

KAIGUANG XU

v.

MAYOR AND CITY COUNCIL OF
BALTIMORE

_____

Fader, C.J.
Wells,
Kenney, James A., III
(Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Kenney, J.
_____

Filed: March 30, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal arises from a condemnation action filed by the Mayor and City Council of Baltimore (the "City"), in the Circuit Court for Baltimore City. Appellant, Kaiguang Xu, appeals the award of $24,000 as just compensation for her property, 1238 West Mosher Street (the "Property").

Ms. Xu, who is self-represented, presents two questions on appeal,[1] which, based on her argument, we have reworded as follows:

I.     Was it legally correct to hold the trial without a jury?
II.    Did the circuit court improperly limit Ms. Xu's testimony when she attempted to testify as to the value of her property?

Under the circumstances of this case, we hold that it was error to hold the trial without a jury and reverse. We address the second question for guidance in the event of a retrial.

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 16, 2018, the City petitioned to condemn the Property, which was then an uninhabitable, vacant, three-story group row house with the potential for commercial space on the first floor and residential space on the top two. It was then owned by Co. 351 LLC, a Florida-based limited liability company. Ms. Xu purchased the property on or about March 15, 2019, but the deed was not recorded until July 2, 2019. An Order of

---

[1] The questions Ms. Xu presented are: "1. Was the trial court's judgment of Appellant's condemned property without just compensation legally correct when Constitution of Maryland Section 40 requires just compensation to property owner?
2. Was it legally correct that from a fee simple commercial property appraisal value changed to fee simple residential zoning property appraisal value in Baltimore City, when Constitution of Maryland, Article XI-B, Annotations Code of Maryland, Noted: Baltimore City cannot use zoning to depress land values?"

Default had been entered on the Petition for Condemnation on May 30, 2019, and a Judgment upon inquisition in the amount of $22,150 was entered on July 10, 2019. After Ms. Xu contacted the City challenging the award, the City moved to reopen the case in the interest of justice; it was reopened on December 11, 2019, and the earlier judgment was later vacated. Trial was scheduled for October 7, 2020.

On September 16, 2020, in a telephone status conference with the court, Ms. Xu and counsel for the City appeared to agree to a bench trial. According to a Status Order entered on October 2, 2020, the court had discussed whether Ms. Xu "was *voluntarily* waiving any right to a jury trial," but the only decision the court made in that conference was that a jury trial could not be held on October 7, 2020. On October 1, 2020, the day before the Status Order was entered, Ms. Xu requested "to change from no jury trial to a jury trial" in a filing with the circuit court captioned "Trial Memorandum, Response from Defendant."[2]

In the Status Order, the court stated that both parties "have important rights" but those rights "must be asserted within the requirements of the Maryland Rules." It explained that if Ms. Xu asserts a right to a jury trial, and if the court finds that that assertion was timely, then the trial would not be able to proceed as scheduled. That order further stated that "[a]ll requests for action by the Court shall be by written motion filed with the Clerk

---

[2] Ms. Xu stated in her filing: "My name is kaigung xu, the owner of property 1238 Mosher ST, Baltimore. I respectfully notice Mayor and city council of Baltimore that we need jury on October 7, 2020 trial. At the conference of September 16, 2020, I had agreed with no jury trial that was recommended by Baltimore city was a mistake, I was no real knowledge of jury. Now I have learned and recognized that jury is very important for the trial on October 7, 2020, it is truly necessary to benefit the trial. I request to change from no jury trial to a jury trial."

or by oral motion made on the record during a court proceeding." Ms. Xu did not file a second written request for a jury trial and she did not orally advance her jury request at the October 7, 2020 hearing. The case proceeded as a bench trial without reference to Ms. Xu's October 1, 2020 filing.

By way of an opening statement, Ms. Xu stated that she was contesting value but not the City's right to acquire the Property. Testimony began with the City's appraiser testifying that the Property's fair market value was $24,000. The appraiser, taking into consideration the Property's condition, used a sales-comparison approach to determine value. The Property had been vacant for years; drywall, ceilings, and flooring had been removed; there were exposed joists, plumbing, and wiring; and, even after Ms. Xu's improvements, it remained uninhabitable. His three comparables were all located within one-half mile of the Property; were of similar size as the Property and the end unit in a row of multiple structures; and each was zoned R-8.

Ms. Xu testified that the Property had been listed for sale for $46,999 a year before she purchased it. That price was later lowered to $24,999 and she purchased it for $15,000. When she bought it, it needed a new roof, the inside was wet and moldy, walls were falling down, and it required many other improvements. Since buying it, she had installed a new roof for $15,000, installed new air ducts, removed debris, cleaned the inside, fixed wiring, and installed lights.

Ms. Xu's appraiser valued the property at $81,500 using a sales-comparison approach, but his comparables were markedly different and further from the Property than

3

the City's appraiser's comparables. For example, some were in a different neighborhood, some were two stories rather than three, half of them were not end-of-group structures, and some were over a mile from the Property. And although the Property was in the R-8 zone, three of the comparables were zoned C-1 commercial.

After hearing the testimony, reviewing the appraisal reports, and viewing the Property, the trial court found the value of the property to be $24,000. Explaining that both appraisers had acknowledged the improvements that Ms. Xu had made on the Property, the court found the City's appraisal more persuasive because the comparables were more similar to the Property in location, size, and zoning. According to the court, the City's comparables were "all corner properties, they all have the same feature of potential commercial space on the first floor with residential space above, and they all had the same zoning issue, that being in R-8 districts where, presumably, the commercial use would depend on reinstating some prior Neighborhood Commercial use for the properties." The court did not understand how Ms. Xu's appraiser "could possibly believe that the market has increased to the point where it would have a fair market value of $81,500 without any significant changes, except for the cleaning it up, and putting the new roof on it."

The inquisition, which was dated October 7, 2020, and entered on October 13, 2020, for $24,000, reflects that a jury trial had been "waived either by consent or default of parties."

**DISCUSSION**

I.     *Jury Trial Waiver*

4

*Standard of Review*

"When a trial court's order involves an interpretation and application of Maryland statutory and case law, [an appellate court] must determine whether the lower court's conclusions are legally correct under a de novo standard of review." *Nesbit v. GEICO*, 382 Md. 65, 72 (2004). The Maryland Rules are also interpreted under a de novo standard of review. *Davis v. Slater*, 383 Md. 599, 604 (2004).

*Contentions*

Ms. Xu contends that the trial court erred in holding a bench trial. She argues that "a condemnation case is always tried before a jury unless all parties to the suit agree in writing to submit the case for determination without a jury."

The City responds that Ms. Xu elected to have a bench trial during the telephone status conference with the court, and that, when she changed her mind, she did not "formally request a jury."

*Analysis*

This appeal involves who determines just compensation in a condemnation proceeding, but, more particularly, it involves the interplay between a Maryland constitutional provision, the general rules of civil procedure, and the specific rules related to condemnation actions. Here, Article XI-B of the Maryland Constitution, Maryland Rule 12-207(a), and Maryland Rule 1-101(a), (b), and (l) are all at play. Article XI-B of the Maryland Constitution states in pertinent part:

No land or property taken by the Mayor and City Council of Baltimore for [land development or redevelopment] or in connection with the exercise of any of the powers which may be granted to the Mayor and City Council of Baltimore pursuant to this Article by exercising the power of eminent domain, shall be taken without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation.[3]

The jury trial language of that provision invokes Maryland Rule 12-207(a), which states:

An action for condemnation shall be tried by a jury unless all parties file a written election submitting the case to the court for determination. All parties may file a written election submitting an issue of fact to the court for determination without submitting the whole action.

Maryland Rule 1-101 provides:

(a) Title 1 applies to all matters in all courts of this State, except the Orphans' Courts and except as otherwise specifically provided.

---

[3] Both parties appear to see Article III § 40 of the Maryland Constitution as the source of Ms. Xu's right to a jury trial in this case.  But, Article XI-B speaks directly to the City's authority to acquire "land and property" by condemnation "for development or redevelopment" and expressly provides that property taken by condemnation shall not be taken "without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation." *See also* John J. Ghingher Jr. & John J. Ghinger III, *A Contemporary Appraisal of Condemnation in Maryland*, 30. Md. L. Rev. 301, 302 nn.3-4 (1970).  The language in XI-B related to "just compensation" being "awarded by a jury" tracks Article III § 40.  Ms. Xu cites *Mayor and City Council of Baltimore v. Kelso Corporation*, 281 Md. 514 (1977), which refers to both Article III § 40 and Article XI-B, for an unrelated proposition.  The City makes no reference to Article XI-B.  The Court of Appeals has referred to Article XI-B in Baltimore City condemnation cases and we will do so here. *See Prince George's Cnty. v. Collington Crossroads, Inc.*, 275 Md. 171 188 n.4 (1975); *Herzinger v. City of Baltimore*, 203 Md. 49 (1953).  Chapter 2 of Title 12 specifically governs "actions for acquisition of property by condemnation under the power of eminent domain." Md. Rule 12-201.  And both Article III § 40 and Article XI-B require, in the absence of an agreement, just compensation to be awarded by a jury.  Under either, Rule 12-207(a) applies and, for the purposes of this opinion, the result would be the same.

(b) Title 2 applies to civil matters in the circuit courts, except for Juvenile Causes under Title 11, Chapters 100, 200, 400, and 500 of these Rules except as otherwise specifically provided or necessarily implied.

\* \* \*

(l) Title 12 applies to property actions relating to writs of survey, lis pendens, actions for release of lien instruments, condemnation, mechanics' liens, partition, redemption of ground rents, replevin, detinue, severed mineral interests, and actions to quiet title.

The City acknowledges in its brief that the Maryland Constitution provides the right to a jury trial on the issue of "just compensation," but, citing Md. Rule 12-207(a), it contends that "a property owner can waive that right and elect a bench trial." And that contention is true as far as it goes.[4] But to waive a jury and elect a bench trial, Rule 12-207(a) requires that "*all parties file a written election* submitting the case to the court for determination." Md. Rule 12-207(a) (emphasis added). Otherwise, a jury trial is the default position under the rule.

The City's jury waiver argument rests on Ms. Xu having agreed to a bench trial during the telephone status conference, and not "formally request[ing] a jury" after changing her mind. In its Status Order, the trial court stated that Ms. Xu had "made conflicting statements about her desire for a jury trial," and that counsel for the City had questioned whether Ms. Xu "had preserved her right to a jury trial with a timely demand." It also indicates discussions during the status conference of a bench trial and whether Ms. Xu had "voluntarily" waived any right to a jury trial, but that the only issue decided by the

---

[4] The City cited the applicable rule, but it omitted language from the rule adverse to its position. Comment 4 of Rule 19-303.3 explains that legal argument is meant to be "a discussion seeking to determine the legal premises properly applicable to the case."

7

court at the telephone conference was that pandemic conditions would not permit a jury trial on October 7, 2020. According to the court, "if Ms. Xu asserts a right to a jury trial and the court finds that that assertion was timely," a jury trial could not be held on October 7, 2020. But "[i]f Ms. Xu either does not assert a right to a jury trial or if the Court determines she has not preserved that right then the trial will proceed on October 7, 2020. In either event, the parties will report on October 7, 2020, at 10:00 a.m. to resolve the remaining issues."

The parties appeared on October 7, 2020. At the beginning of the proceedings there was a discussion regarding sequestering witnesses and COVID-19 precautions, specifically that masks and plexi-glass protectors could make hearing and understanding difficult. In regard to sequestering the witnesses, Ms. Xu stated that she did not "really understand what [the court was] asking [her]."

The court then explained that it had issued the Status Order because Ms. Xu was "proceeding without an attorney," which had resulted in off-the-record communications— "things that were not filed with the clerk, and made part of the record." The Status Order was entered on October 2, 2020, one day after Ms. Xu had filed a written request for a jury trial referencing the status conference. It stated that no party or counsel "shall communicate further with the court by email" and that "[a]ll requests for action by the court shall be by written motions filed with the Clerk or by oral motion made on the record during a court proceeding."

Based on the Status Order, the court asked:

8

[The Court]: So let me first make sure that *since I issued that order, neither side has filed any written motions*. Is that correct for the Plaintiff?

[The City]: Yes, Your Honor.

[The Court]: And is that correct, Ms. Xu, you *have not filed anything in writing with the Clerk since* –

[Ms. Xu]: Okay.

[The Court]: -- *I issued the order*?

[Ms. Xu]: Yes, yes, Your Honor. Thank you.

[The Court]: All right. So I want to make sure that there are no written motions out there that I'm not aware of. All right.

Even assuming that Ms. Xu understood the court's inquiry regarding a "written motion" and "filed anything in writing with the clerk," she responded correctly. She had not filed a written request for a jury since the Status Order was issued; she had filed a written request for a jury with the Clerk's office, though not styled as a motion, the day before. But it appears as likely that she did not fully understand the court's inquiry. In sum, there is no indication in the record that the court was aware of Ms. Xu's prior written request for a jury trial. Ms. Xu did not mention it and the court did not reference it. Whether that was because the court was unaware of her request, or because it was not styled as a motion, or because it was not filed after the issuance of the Status Order, or because the court had found her right to a jury trial had not been preserved, we do not know.

The trial court's statements in its Status Order indicate that the door remained open for a jury trial request as late as the October 7, 2020 hearing so long as Ms. Xu had preserved her right to a jury trial. If by "preserved" the court was referring to making a

9

timely election of a jury trial under Rule 2-325(a) and (b),[5] that would depend on whether Rule 2-325 trumps Maryland Rule 12-207(a). We are persuaded that it does not.

In reaching that decision, we find *Montgomery County v. Soleimanzadeh*, 436 Md. 377 (2013), which addressed a similar issue, to be instructive. In that case, the Court held that the summary judgment rule, Rule 2-501, applied in a condemnation case when the land owners were "precluded from introducing *any evidence* as to the value of the taken property" as a result of their failure to comply with discovery. *Soleimanzadeh*, 436 Md. at 387 (emphasis added). The Court viewed the landowner's right to have a jury award of just compensation under the Maryland Constitution as "the *opportunity*[6] [for a landowner] to have a jury award just compensation" in condemnation cases, but that opportunity could be lost by "fail[ing] to abide by *the governing rules of procedure applicable* before the matter is submitted to a jury." *Id.* at 396 (emphasis added).

In *Soleimanzadeh*, the landowners' counsel informed the County that his clients "would not file any responses to discovery requests to be served by the County." 436 Md.

---

[5] Rule 2-325(a) and (b) provide: "(a) Demand. Any party may elect a trial by jury of any issue triable of right by a jury by filing a demand therefor in writing either as a separate paper or separately titled at the conclusion of a pleading and immediately preceding any required certificate of service. (b) Waiver. The failure of a party to file that demand within 15 days after service of the last pleading filed by any party directed to the issue constitutes waiver of trial by jury."

[6] In *Baltimore Belt. R.R. Co. v. Baltzell*, 75 Md. 94, 105 (1891), cited by the Court in *Soleimanzadeh* to support its opinion, the Court stated: "The jury is the tribunal, and the sole tribunal, by whom the amount of compensation is to be determined, and this being so, it would seem but fair and reasonable that the owner should have *the opportunity of submitting to the jury such evidence as he might deem proper* in regard to the value of his property." *Id.* at 105 (emphasis added).

at 383.  In addition, the landowners did not file a response to the County's Motion to Compel or for Sanctions, or to the circuit court's order to file complete responses in ten days or "not be permitted to introduce any evidence" to support their just compensation claim. *Id.* at 383-84.  The Court of Appeals concluded that summary judgment[7] was appropriate in that case and did not violate the Maryland Constitution[8] or Rule 12-207(a) because the sanction precluding the property owners from presenting "any evidence" of property value meant that a jury would not "be able to award an amount higher than the value tendered by the [County's] sole expert." *Id.* at 399.  In other words there were no material facts as to value in dispute.

It is well-established that "under Rule 1-101(b), the rules of civil procedure in Title 2 apply in general to condemnation proceedings," except as "otherwise specifically provided or necessarily implied." *Id.* at 389.  We distill from *Soleimanzadeh* that the issue of just compensation in a condemnation case shall be decided by a jury unless the landowner has willfully frustrated the efficiency and function of the judicial process by violating the "applicable" rules of procedure. *Id.* at 369.  But it would be rarely appropriate to deny a landowner the opportunity to submit evidence of value to a jury. *Id.* at 397 n. 8.

---

[7] The Court acknowledged that summary judgment was rarely appropriate and "should be granted sparingly in condemnation proceedings" because of the many options available to a property owner to prove value. *Soleimanzadeh*, 436 Md. at 397.  Had the sanction been challenged on appeal, the Court also recognized that it would have been "faced with the more difficult question of whether the circuit court abused its discretion" in imposing sanctions that precluded the introduction of evidence of value for a jury to consider. *Id.* at 388 n. 5.

[8] In *Soleimanzadeh*, the Court was assessing the conduct under Article III, § 40, as opposed to Article XI-B.  The result, however, remains the same.

This case is factually and procedurally different from *Soleimanzadeh*. Ms. Xu produced evidence of value, and, as we will later discuss, she wanted to present more. The record does not indicate a discovery violation with a resulting sanction, or that Ms. Xu was willfully trying to "frustrate the efficient adjudication of the court system." *Id.* at 373. What the record does indicate is that Ms. Xu clearly wanted a jury trial and had requested one in a writing filed with the court. She did not, however, fully understand what she needed to do or say to get it.[9]

If Ms. Xu's written request for a jury was denied because she failed to request it in the form of a written or oral motion after the Status Order was entered, we are not persuaded that the applicable rules required her to do so. Rule 1-101(b) makes Title 2 applicable to "all civil matters in the circuit courts . . . *except as otherwise specifically provided.*" (Emphasis added). Title 12 governs property actions generally. Rule 12-201 provides that the "rules in this chapter govern actions for acquisition of property by condemnation under the power of eminent domain," and Rule 12-207(a) "specifically" provides that an "action

---

[9] Ms. Xu was self-represented at trial and is on appeal, and the record suggests that English is a second language. The Status Order also indicates that some rules were violated, but apparently not to the extent of a sanction or unfair prejudice to the City. The trial court encouraged her to get counsel and tried to help her understand the process. It also noted that the masks and plexi-glass created an issue of hearing and understanding for everyone and to advise the court when it happened. To be sure, "[t]he principle of applying rules equally to *pro se* litigants is so accepted that it is almost self-evident," *Tretick v. Layman*, 95 Md. App. 62, 68 (1993). On the other hand, we have "liberally construed pleadings filed by self-represented litigants." *Huertas v. Ward*, 248 Md. App. 187, 207 (2020) ("Despite whatever deficiencies the motion might have had, the motion did enough to communicate to the court and to the substitute trustees that [the self-represented litigant] was asking the court to stop the foreclosure sale from happening.").

12

for condemnation shall be tried by a jury unless all parties file a written election submitting the case to the court for determination. . . ."[10] In other words, the *election* of a jury in a condemnation case is not necessary because, in the absence of a written and mutual election for a bench trial, Rule 12-207(a) expressly mandates a jury trial. In *Soleimanzadeh*, a jury trial was expressly forfeited by the knowing and intentional violation of the discovery rules which clearly are applicable to condemnation cases because nothing in Title 12 suggests otherwise. We hold that in the absence of a *written election* for a bench trial by all parties, this case was to be tried by a jury and Ms. Xu did not otherwise forfeit her right to a jury.

## II. *Limiting Ms. Xu's Testimony*

Ms. Xu testified at trial from a prepared statement. She introduced herself as the owner of the Property and stated that she was a realtor. She attached a copy of her real estate license to her statement. The City objected to the introduction of the license because it had not been presented during discovery. The court overruled that objection because the City's discovery requests did not require disclosure of the license.

When Ms. Xu began to discuss the value of the Property in relation to three other properties that had sold in the past year, counsel for the City again objected. She asked if Ms. Xu was "testifying as an expert . . . as to the different properties." This led to the following exchange:

> [The Court]: Well, the objection is that you're not an expert. You haven't been qualified as an appraiser. So you can't testify to value. You can testify

---

[10] Rule 12-207(a) also provides that all parties "may file a written election submitting an issue of fact to the court for determination without submitting the whole action."

13

to the characteristics of the property, *but not to value*, because that's why you have an expert.

[Ms. Xu]: Okay. Okay. Because I –

[The Court]: So the objection is sustained.

[The City]: Thank you, Your Honor.

[Ms. Xu]: Because I am a --

[The Court]: Go ahead.

[Ms. Xu]: I am realtor, I knew the market. I knew the market, and so I use – I go to my professional commercial sell marketing to looking for the commercial similar with my property.  So that's what I'd done. Another –

[The City]: Objection.

[The Court]: Ma'am, *I've sustained the objection to you as an expert.  You can testify to what you looked at or why you looked at this property, but not to a comparable for purposes of valuation.  That's what your expert is for.*

(Emphasis added).

### Standard of Review

Admissibility of evidence is ordinarily left to the discretion of the trial court, *Moreland v. State*, 207 Md. App. 563, 568 (2012), and courts are reluctant to set aside verdicts based on evidentiary rulings "unless they cause substantial injustice." *State Deposit Ins. Fund Corp. v. Billman*, 321 Md. 3, 17 (1990); *Hance v. State Roads Comm'n*, 221 Md. 164, 176 (1959).

### Contentions

Ms. Xu contends that the court denied her the opportunity to testify to the Property's value.

14

The City contends that Ms. Xu was trying to testify as a realtor and not as the owner of the Property, and because she had not been qualified as an expert, it was appropriate to limit her testimony. It also contends that she has "failed to establish" that the court's ruling or her self-represented status would "counsel in favor of reversal."

*Analysis*

Owners of property are "prima facie competent to express [their] opinion as to [the property's] value without qualification as an expert." *Stickell v. City of Baltimore*, 252 Md. 464, 474 n.1 (1969). Moreover, they are "at least presumptively competent to testify to [their] estimate of its value, however unreasonable that estimate may sometimes be." *Greater Baltimore Consol. Wholesale Food Market Authority v. Duvall*, 255 Md. 90, 93 (1969).

Ms. Xu was attempting to give her opinion as to the value of the Property. As the owner, she was presumptively competent to do so. If property owners are prima facie competent to express their opinion as to value without being qualified as an expert, it follows that they should be able to testify as to how they arrived at that opinion. As the Court of Appeals said in *Batzell*, "it would seem but fair and reasonable that the owner should have the opportunity of submitting to the [tribunal] such evidence as he [or she] might deem proper in regard to the value of [the] property." *Baltzell*, 75 Md. at 105.

An owner's experience in real estate and with the use of comparables in appraisals would go to its weight. And there may be very sound reasons for an owner not to testify to value when she has engaged a qualified expert to testify to value. But, in the absence of

15

a clear discovery rule violation, preventing owners, whether or not qualified as experts, from providing their opinion of the value of their property and how they reached it, would ordinarily be error and therefore an abuse of discretion.

Ms. Xu's appraiser's testimony of the Property's value was not credited by the court. We do not know what her testimony would have been or that it would have been persuasive in any way. But had she been allowed to testify as to value in regard to other properties, perhaps the court's decision would have been different.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS REVERSED. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**