*Credible Behavioral Health, Inc. v. Emmanuel Johnson*, No. 19, September Term 2019. Opinion by Greene, J.

**APPEAL AND ERROR—JUDGE AS FACTFINDER BELOW**
Under Maryland Rule 7–131(f), the circuit court, when hearing an appeal on the record from the district court, reviews the district court's factual determinations for clear error and its legal conclusions *de novo*.

**CONTRACTS—CONSTRUCTION AND OPERATION—GENERAL RULES OF CONSTRUCTION**
Under the promissory note at issue, employees are required to repay the loan in accordance with the repayment schedule in Paragraph 1(a) in both situations where an employee is fired or quits.

Circuit Court for Montgomery County
Case No. 9858D
Argued: October 8, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 19

September Term, 2019

_____

CREDIBLE BEHAVIORAL HEALTH, INC.

v.

EMMANUEL JOHNSON

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Greene, Clayton, Jr. (Senior Judge,
Specially Assigned)

JJ.
_____

Opinion by Greene, J.
_____

Filed: November 20, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Petitioner, Credible Behavioral Health, Inc. ("Credible") offers a tuition loan program to its employees aimed at incubating and furthering their professional development. Respondent, Emmanuel Johnson, a former employee of Credible, participated in this program from August 10, 2016 until he was fired several months later. Under a promissory note outlining the agreement, the amount of the loan that must be repaid is dependent upon the length of time an employee works for Credible after completing his or her education.

This case presents two issues for our consideration: (i) the appropriate standard of review in an appeal on the record from the district court to the circuit court; and (ii) the interpretation of a promissory note. As to the second issue, Mr. Johnson contends that the agreement contemplates repayment only if an employee quits within a relevant time period; whereas, Credible argues that repayment is required upon the conclusion of employment within that time period, regardless of whether an employee is fired or quits. We shall hold that: (i) a circuit court, in hearing an appeal on the record from the district court, reviews the district court's factual determinations for clear error and its legal conclusions *de novo*; and (ii) the promissory note, when read as a whole and viewed in the appropriate context, requires repayment of the principal balance in both situations where an employee quits and where Credible fires an employee.[1]

---

[1] We note that the requirement to repay the principal balance is conditioned upon the occurrence and non-occurrence of several events. This will be explained in greater detail in the following section.

## FACTUAL AND PROCEDURAL BACKGROUND

Credible is a Delaware corporation that provides software solutions to behavioral health and human service providers. To cultivate its employees' professional development, Credible offers a tuition loan program to them. Under the program, Credible agrees to loan funds to employees who wish to obtain additional education—be it undergraduate, graduate, or post-graduate certificate programs. The percentage of the loan that an employee must repay is dependent upon the length of time he or she works for Credible subsequent to completing his or her studies.

Mr. Johnson was an employee of Credible in 2016. On August 10, 2016, Mr. Johnson entered into Credible's tuition loan program, and the parties memorialized their agreement under the terms of an unsecured promissory note. Paragraph 1(a) of the promissory note contains a schedule which sets forth the conditions of tuition repayment under the program:

> **FOR VALUE RECEIVED**, Emmanuel Johnson ("Borrower"), an individual and an employee of **CREDIBLE BEHAVIORAL HEALTH, INC.**, a Delaware corporation ("*Company*"), hereby unconditionally promises to pay to the order of Company in lawful money of the United States of America and in immediately available funds the aggregate principal amount set forth on **Schedule A** together with all accrued and unpaid interest thereon, if any (the "*Loan*"). It is the intent of Borrower and Company that the purpose of this Promissory Note (the "*Note*") is to pay tuition expenses for undergraduate, graduate or post-graduate certificate programs in connection with the Company's Tuition Loan program.
>
> 1. **Principal Repayment**
>
> (a) The principal balance of the Loan plus all accrued interest thereon shall be due and payable in accordance with the following schedule:

(i)     If you terminate employment with the Company within 12 months following achievement of the degree, 100% of the Loan;

(ii)     If you terminate employment with the Company after the 12 month anniversary but on or before the 24 month anniversary following achievement of the degree, 75% of the Loan;

(iii)     If you terminate employment with the Company after the 24 month anniversary but on or before the 36 month anniversary following achievement of the degree, 50% of the Loan; or

(iv)     If you terminate employment with the Company after the 36 month anniversary following achievement of the degree, 0% of the Loan.

(Emphasis in original). The final part of Paragraph 1(a) sets forth the relevant scope of the agreement:

The appropriate percentage of the Loan set forth above, plus all accrued interest thereon shall be due and payable (i) ninety (90) calendar days after the termination of your employment, whether by you or the Company, for any or for no reason whatsoever, or (ii) immediately or at the option of Company, as set forth in Section 4(b) below, upon the occurrence of any Event of Default (as defined by in Section 4 below). Borrower understands that taxes will be deducted from these paychecks based upon the amount that would have been paid Borrower had payments for principal and/or interest not been deducted.

Pursuant to the agreement, Credible loaned Mr. Johnson $12,529 to assist him in paying his tuition. In December of 2017, Credible fired Mr. Johnson. At the time of his termination, Mr. Johnson had not yet obtained a degree. Subsequently, Credible and Johnson entered into a payment plan under which Mr. Johnson made one payment in the amount of $325 on February 28, 2018 and made no further payments. As a result, the balance due on the promissory note was reduced to $12,204.

- 3 -

On April 25, 2018, attorneys for Credible sent a demand letter to Mr. Johnson, which indicated that the principal balance of the loan was due on March 13, 2018 and requested Mr. Johnson make payment by May 25, 2018. As a result of Mr. Johnson's failure to make any additional payments due under the promissory note, on June 8, 2018, Credible brought an action against Mr. Johnson in the District Court of Maryland sitting in Montgomery County seeking repayment of the debt.

The district court held a trial in the matter on September 12, 2018. That same day, the district court entered a judgment in Mr. Johnson's favor. The district court judge reasoned that, under the language of Paragraph 1(a), the amounts set forth only became due if Mr. Johnson quit from his employment with Credible. In its analysis, the district court concluded that Paragraph 1(a) and the provision that follows it were inconsistent. Particularly, the court determined that the provision following Paragraph 1(a) referenced back to Paragraph 1(a) for the amount that would be due if an employee was terminated. In its view, however, the schedule set forth in Paragraph 1(a) only applied in situations where employees quit and therefore there was no basis to determine the amount Mr. Johnson owed by reference to Paragraph 1(a), because he was fired. The trial judge ultimately determined that "[a]t best I'm interpreting it as it exactly is written. At worse it's an inconsistency which goes against the person who drafted the contract."

The following day, September 13, 2018, Credible appealed the judgment of the district court to the Circuit Court for Montgomery County pursuant to Courts and Judicial Proceedings Article § 12–401(a). The circuit court heard the appeal on the record under Maryland Rule 7–102(b) and held a hearing on February 15, 2019. Before that court,

Credible argued that Mr. Johnson was required to repay the loan regardless of whether he was fired or quit. In contrast, Mr. Johnson contended that the district court correctly interpreted the note, and he was only required to repay the loan if he quit. Ultimately, in a written opinion and order dated March 7, 2019, the circuit court found that the district court "was [not] clearly erroneous in its interpretation of the promissory note at issue in this case" and therefore affirmed its judgment.

Thereafter, Credible petitioned this Court for a writ of certiorari, which we granted on June 7, 2019. *Credible Behavioral Health, Inc. v. Johnson*, 464 Md. 7, 210 A.3d 182 (2019). In its petition for a writ of certiorari, Credible presented three questions for this Court's review:

1. Did the [c]ircuit [c]ourt erroneously apply Md. Rule 7–133(f) when it reviewed the [d]istrict [c]ourt's construction of a contract's terms for clear error rather than *de novo*?
2. Did the plain terms of the parties' promissory note ("Note") entitle Credible to a judgment against the defendant below, respondent Emmanuel Johnson?
3. In interpreting the Note, did Maryland law require the [c]ircuit [c]ourt to choose [ ] one among two possible readings of the Note that was consistent with the parties' intent?

**STANDARD OF REVIEW**

Under Maryland Rule 8–131(c), an appellate court reviews cases tried without a jury "on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Md. Rule 8–131(c); *Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 72, 854 A.2d 879, 883 (2004). Although the Rule does not explicitly state the standard of review applicable to a trial court's determinations of legal

- 5 -

questions, this Court has indicated that the clear error standard does not apply to "determinations of legal questions or conclusions of law." *Tribbitt v. State*, 403 Md. 638, 644, 943 A.2d 1260, 1263 (2008). Instead, "[w]hen the trial court's order 'involves an interpretation and application of Maryland statutory [or] case law, [the appellate] [c]ourt must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review.'" *Nesbit*, 382 Md. at 72, 854 A.2d at 883 (quoting *Walter v. Gunter*, 367 Md. 386, 392, 788 A.2d 609, 612 (2002)).

## DISCUSSION

### *The Standard of Review under Maryland Rule 7–113(f)*

First, we must determine the applicable standard of review when a circuit court reviews a judgment of the district court under Maryland Rule 7–113(f). Ultimately, we reaffirm this Court's earlier position that the circuit court reviews the district court's factual determinations for clear error and its legal conclusions *de novo*. The dispute in this case arises from language utilized in the circuit court's order and opinion concerning the relevant standard of review. Therein, the circuit court concluded, "[t]he standard of review in an Appeal heard on the Record is a clearly erroneous standard. This [c]ourt does not find that the [d]istrict [c]ourt was clearly erroneous in its interpretation of the promissory note at issue in this case."

Credible argues that the circuit court erred by applying the clearly erroneous standard to the district court's interpretation of the underlying promissory note. Credible contends that the district court's interpretation or construction of a contract is a legal determination that ought to be reviewed by the circuit court *de novo*. Whereas, Mr. Johnson

- 6 -

argues that the district court's ultimate conclusions stemmed from an application of its factual findings to the contractual language. Moreover, Mr. Johnson contends that, regardless of the applicable standard of review, he should prevail.

On its face, Rule 7–113(f) expressly contemplates only a clearly erroneous standard:

> (f) Scope of Review. The circuit court will review the case on both the law and the evidence. It will not set aside the judgment of the [d]istrict [c]ourt on the evidence unless clearly erroneous, and will give due regard to the opportunity of the [d]istrict [c]ourt to judge the credibility of the witnesses.

Md. Rule 7–113(f). Maryland Rule 1386 is the predecessor to Rule 7–113(f). *Friendly Fin. Corp. v. Orbit Plymouth Chrysler Dodge Truck*, 378 Md. 337, 343 n.5, 835 A.2d 1197, 1200 n.5 (2003). It contained the same relevant provisions as Rule 7–113(f) concerning the scope of review when a circuit court reviews decisions of the district court.[2] Prior to the enactment of Rule 8–131(c), Rule 886 governed this Court's review of actions tried without a jury and contained language nearly identical to that of Rule 1386.[3] In *Ryan v. Thurston*, Chief Judge Murphy, writing for the Court of Appeals, analogized Rules 1386 and 886 to determine the appropriate standard of review when a circuit court hears an

---

[2] Maryland Rule 1386 provided that the circuit court "will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses." *Hous. Opportunities Comm'n of Montgomery Cty. v. Lacey*, 322 Md. 56, 59, 585 A.2d 219, 221 (1991).

[3] Maryland Rule 886 indicated that "[t]he Court of Appeals will not set aside the judgment of the lower court on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

appeal from the district court. 276 Md. 390, 391–92, 347 A.2d 834, 835–36 (1975). He explained that, under the scheme set forth by Rule 1386, the clearly erroneous standard applies only to the district court's factual determinations. *Id.* at 392, 347 A.2d at 836.

Although the *Ryan* Court did not explicitly state that the circuit court reviews the district court's legal conclusions *de novo*, this Court held that the applicable standard of review under Rule 1386 is the same as that governing the Court of Appeals' review of actions tried without a jury under Rule 886 and "that the cases applying these rules are controlling authority governing the interpretation of the scope of appellate review[.]"[4] *Id.* Within the context of Rule 886, this Court has held that "it is equally obvious that the 'clearly erroneous' portion of Rule 886 does not apply to a trial court's determinations of legal questions or conclusions of law based upon findings of fact." *Davis v. Davis*, 280 Md. 119, 124, 372 A.2d 231, 233 (1977) (quoting *Clemson v. Butler Aviation*, 266 Md. 666, 671, 296 A.2d 419, 422 (1972)). Accordingly, under Rules 886 and 1386 a lower court's legal conclusions have historically been reviewed for legal correctness. *See Davis*, 280 Md. at 124–26, 372 A.2d at 233–34.

Subsequent to reorganization of the Maryland Rules, this Court affirmed the analogical approach advanced earlier in *Ryan*, by indicating that the clearly erroneous

---

[4] The Court also drew a comparison between Rule 1386 and Rule 1086 which, at the time, governed the scope of appellate review in cases before the Court of Special Appeals. *Ryan*, 276 Md. at 391, 347 A.2d at 835. Subsequently, the language of Rules 886 and 1086 was incorporated into that of Rule 8–131(c). *See* Md. Rule 8–131; *State Sec. Check Cashing, Inc. v. Am. Gen. Fin. Servs. (DE)*, 409 Md. 81, 109–10, 972 A.2d 882, 899 (2009).

standard applies to the district court's factual determinations and its legal conclusions are reviewed *de novo*:

> These are the same standards of review that [c]ircuit [c]ourts, following Maryland Rule 7–113(f) in cases such as the present one, should apply when they review [d]istrict [c]ourt judgments . . . . Maryland Rule 8–131(c) has nearly identical language to Rule 7–113(f) regarding the scope of appellate review, and cases interpreting Rule 8–131(c) are persuasive regarding Rule 7–113(f). Under Rule 8–131(c), clear error is the proper standard for review of the evidence, **but it is not the proper standard for questions of law, which are reviewed *de novo*.**

*Friendly Fin. Corp.*, 378 Md. at 343 n.5, 835 A.2d at 1200 n.5 (emphasis added) (citations omitted).[5] Further, this Court has consistently interpreted Rule 8–131(c) to require *de novo* review of a circuit court's legal conclusions. *Tribbit*, 403 Md. at 644, 943 A.2d at 1263 (2008); *Goff v. State*, 387 Md. 327, 337–38, 875 A.2d 132, 138 (2005); *Friendly Fin. Corp.*, 378 Md. at 342–43, 835 A.2d at 1200.

Ultimately, our precedent on this issue and a comparison between Rule 7–113(f) with its appellate analog Rule 8–131(c) and their predecessors, make clear that the circuit

---

[5] The facts of *Friendly Fin. Corp.*, concerning the circuit court's application of the clearly erroneous standard, are strikingly similar to those of the instant appeal. The Court commented, "[t]he [c]ircuit [c]ourt in this case, however, may have applied a 'clearly erroneous' standard to its review of the [d]istrict [c]ourt's legal analysis. We glean this from the fact that, in its written opinion, the [c]ircuit [c]ourt made reference only to the deferential clearly erroneous standard." 378 Md. at 343 n.5, 835 A.2d at 1200 n.5.

Similarly, the express language of the circuit court's order in the instant appeal evinces a blanket application of the clearly erroneous standard to both the district court's factual and legal conclusions. In *Friendly Fin. Corp.*, however, the Court held that the circuit court's erroneous application of Rule 7–113(f) was ultimately harmless. *Id.* ("Because we agree that the [d]istrict [c]ourt's legal analysis was correct, the [c]ircuit [c]ourt's possible applications of the incorrect standard of review was harmless error if it was error at all.")

court reviews the district court's legal conclusions *de novo*. Our interpretation of Rule 7–113(f) is entirely consistent with the uncontroverted proposition that, under Rule 8–131(c), this Court reviews a lower court's factual determinations for clear error and its legal conclusions *de novo*. Accordingly, we hold that, in an appeal on the record under Rule 7–113(f), the circuit court reviews the district court's factual determinations for clear error and its legal conclusions *de novo*.

Next, we must determine whether the district court's interpretation of the promissory note is a legal conclusion. Regarding this issue, we have consistently held that "the interpretation of a contract, including the question of whether the language of a contract is ambiguous, is a question of law subject to *de novo* review." *Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520, 526 (2006) (citing *Towson v. Conte*, 384 Md. 68, 78, 862 A.2d 941, 946 (2004)); *Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 86, 5 A.3d 683, 690 (2010) (citing *Clancy v. King*, 405 Md. 541, 556–57, 954 A.2d 1092, 1101 (2008)); *Dennis v. Fire & Police Emp.'s' Ret. Sys.*, 390 Md. 639, 656, 890 A.2d 737, 747 (2006); *Walton v. Mariner Health of Md., Inc.*, 391 Md. 643, 660, 894 A.2d 584, 660 (2006) (quoting *Myers*, 391 Md. at 197–99, 892 A.2d at 526–27); *Sy-Lene of Washington, Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 163, 829 A.2d 540, 544 (2003); *Lema v. Bank of Am., N.A.*, 375 Md. 625, 641, 826 A.2d 504, 513 (2003).

Clearly, the interpretation or construction of a contract is a legal determination subject to *de novo* review. As evident from the language utilized in the circuit court's order and opinion, the district court engaged in contract interpretation—a legal determination. Therefore, the circuit court's broad application of the clearly erroneous standard and its

conclusion "that the [d]istrict [c]ourt was [not] clearly erroneous in its interpretation of the promissory note" were made in error.

*Interpretation of the Promissory Note*

Having clarified the appropriate standard of review under Rule 7–113(f), regarding a circuit court's review of the district court's legal determinations and demonstrated that a court's engagement in contract interpretation is a legal determination, we must now interpret the promissory note at issue in the appeal *sub judice*.

The dispute over the promissory note in the instant appeal concerns the requirement to repay the loan and the classes of employees to which the repayment obligation applies. Mr. Johnson contends that, based on the promissory note's plain language, the circuit court correctly interpreted the note to require repayment of the underlying loan only in situations where an employee quits his or her job with Credible. In contrast, Credible argues that the terms of the promissory note, taken as a whole, reveal that the parties intended the loan to be repaid upon termination of employment within the relevant time period—regardless of whether an employee is fired or quits. Moreover, neither party contends that the provisions of the promissory note are ambiguous.

Generally, Maryland courts subscribe to the objective theory of contract interpretation. *Myers*, 391 Md. at 198, 892 A.2d at 526. Under this approach, the primary goal of contract interpretation is to ascertain the intent of the parties in entering the agreement and to interpret "the contract in a manner consistent with [that] intent." *Ocean Petroleum, Co.*, 416 Md. at 88, 5 A.3d at 691 (citing *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985)). An inquiry into the intent of the

- 11 -

parties, where contractual language is unambiguous, is based on what a reasonable person in the position of the parties would have understood the language to mean and not "the subjective intent of the parties at the time of formation." *Ocean Petroleum, Co.*, 416 Md. at 86, 5 A.3d at 690 (citing *Cochran v. Norkunas*, 398 Md. 1, 17, 919 A.2d. 700, 709 (2007)); *Auction & Estate Representatives, Inc. v. Ashton*, 354 Md. 333, 340, 731 A.2d 441, 444 (1999) ("the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean." (quoting *Calomiris v. Woods*, 353 Md. 425, 436, 727 A.2d 358, 363 (1999)).

Ascertaining the parties' intentions requires us to consider the plain language of the disputed contractual provisions "in context, which includes not only the text of the entire contract but also the contract's character, purpose, and 'the facts and circumstances of the parties at the time of execution.'" *Ocean Petroleum, Co.*, 416 Md. at 88, 5 A.3d at 691 (quoting *Pac. Indem. Co.*, 302 Md. at 388, 488 A.2d at 488). Throughout this review, we interpret a contract's plain language in accord with its "ordinary and accepted meaning[.]" *Ocean Petroleum, Co.,* 416 Md. at 88, 5 A.3d at 691 (quoting *Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 210, 783 A.2d 194, 199 (2001)).

Contractual language is ambiguous where a reasonably prudent person could ascribe more than one reasonable meaning to it. *Calomiris*, 353 Md. at 436, 727 A.2d at 363. Where a court determines contractual language to be ambiguous, the narrow bounds of the objective approach give way, and the court is entitled to consider extrinsic or parol evidence to ascertain the parties' intentions. *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 508, 667 A.2d 617, 619 (1995). Additionally, we have previously noted that "a term which is

clear in one context may be ambiguous in another." *Id.* (citing *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 74, 517 A.2d 730, 732 (1986)).

The disputed term in this appeal is the word "terminate" as utilized in Paragraph 1(a) of the promissory note.[6]  Traditionally, to supply contractual language with its "ordinary and accepted meanings[,]" this Court consults the dictionary definition of such terms.  *Pac. Indem. Co.*, 302 Md. at 388, 488 A.2d at 489 (commenting that we have "consulted Webster's Dictionary, Random House Dictionary, or, less often, Black's Law Dictionary" for this purpose).  Webster's Dictionary defines the word "terminate" as "1. [t]o bring to an end or a halt.  2.  To occur at or form the end of : conclude."  Webster's II New College Dictionary 1166 (3rd ed. 2005).

At its most basic, viewed relative to this definition, the repayment obligation is conditioned upon an employee concluding his or her employment with Credible.  As evident from the parties' arguments, this language could be interpreted in two different ways.  Further, we are faced with two contrary interpretations of the promissory note: (i) employees are obligated to repay the loan in both situations where the employee is fired or quits; and (ii) an employee is obligated to repay the loan only in situations where he or she quits.  As we will demonstrate, the former interpretation, advanced by Credible, is reasonable.  Whereas, the latter, advanced by Mr. Johnson, is not.  On this basis, the promissory note is not ambiguous.

---

[6] The primary thrust of Mr. Johnson's argument on this point focuses on the subject of the sentence—"you"—rather than the term "terminate."

We have previously explained that our journey into the interpretation of a contract commences with "[d]etermin[ing] from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated[.]" *Dumbarton Improvement Ass'n v. Druid Ridge Cemetery Co.*, 434 Md. 37, 53–54, 73 A.3d 224, 233 (2013) (quoting *Calomiris*, 353 Md. at 436, 727 A.2d at 363) (internal quotation marks omitted).  We begin our inquiry into the intent of the parties by examining the preamble of the promissory note.

The preamble indicates that Mr. Johnson "unconditionally promises to pay to the order of [Credible] . . . the aggregate principal amount set forth on **Schedule A** together with all accrued and unpaid interest thereon." (emphasis in original).  Additionally, the preamble notes that "the intent of [Mr. Johnson] and [Credible] that the purpose of this Promissory Note . . . is to pay tuition expenses for undergraduate, graduate or post-graduate certificate programs in connection with [Credible's] Tuition Loan program."  The intent of the parties becomes increasingly clear in the context of the paragraph that follows Paragraph 1(a).

The final part of Paragraph 1(a) provides context to the application of Paragraph 1(a) and clearly constitutes an obligation to repay the loan.  It reads,

> [t]he appropriate percentage of the Loan set forth above, plus all accrued interest thereon **shall be due and payable (i) ninety (90) calendar days after the termination of your employment, whether by you or the Company, for any or for no reason whatsoever**, or (ii) immediately or at the option of Company, as set forth in Section 4(b) below, upon the occurrence of any Event of Default (as defined by in Section 4 below). Borrower understands that taxes will be deducted from these paychecks based upon the amount that would have been paid [by] Borrower had payments for principal and/or interest not been deducted.

- 14 -

(Emphasis added). In other words, regardless of the specific language used in Paragraph 1(a), the provision that follows it requires employees to repay the loan in situations where he or she is fired. This independent obligation merely references the previous four subparagraphs to determine the amount due on the loan based upon how long an employee maintains employment with Credible after attaining a degree or certificate. Furthermore, the provision substantially uncloaks the intent underlying the promissory note. It makes clear that the parties intended the loan to be repaid in accordance with the framework established in Paragraph 1(a) in situations where Credible fires an employee.

We have previously indicated that, when interpreting contracts, "[w]e also attempt to construe contracts as a whole, to interpret their separate provisions harmoniously, so that, if possible, all of them may be given effect." *Walker v. Dep't of Human Res.*, 379 Md. 407, 421, 842 A.2d 53, 61 (2004) (citing *Jones v. Hubbard*, 356 Md. 513, 534–35, 740 A.2d 1004, 1016 (1999)). More specifically, contract interpretation requires that "[e]ffect . . . be given to each clause" to avoid "an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Clancy*, 405 Md. at 557, 954 A.2d at 1101 (quoting *Sagner v. Glenangus Farms, Inc.*, 234 Md. 156, 167, 198 A.2d 277, 283 (1964)) (internal quotation marks omitted). Under the interpretation of the promissory note adopted by the district court and affirmed by the circuit court, the substance of this provision is jettisoned absent any reasonable justification.

- 15 -

As evident, the conditions of this provision are indeed meaningful, and we can "find no sound reason to read the [provision] out of the contract." *Sanger*, 234 Md. at 167, 198 A.2d at 283. This is especially true where the intent of the parties is readily ascertainable, and the substance of Paragraph 1(a) can be reconciled with the remaining provisions in the promissory note. Based on the ordinary and accepted meaning of the term "terminate," Paragraph 1(a) employs somewhat awkward language that indicates the amount due on the loan if the employee concludes his or her employment. The paragraph contains no substantive indication that the amount becomes due only if an employee unilaterally concludes his or her employment. The final part of Paragraph 1(a) reveals that the repayment schedule applies both in situations where an employee is fired or quits. Our conclusion is further buttressed by several other aspects of the promissory note.

As a bedrock principle of contract interpretation, Maryland courts consistently "strive to interpret contracts in accordance with common sense." *Brethren Mut. Ins. Co. v. Buckley*, 437 Md. 332, 348, 86 A.3d 665, 674 (2014) (citing *Fister*, 366 Md. at 219, 783 A.2d at 205). For two reasons, interpreting the promissory note to require repayment only when an employee of Credible quits defies such a common sense approach.

First, the circuit court's and district court's interpretation of the promissory note runs contrary to common sense and strains credulity, because it results in the disparate treatment of employees based upon whether they are fired or quit. Particularly, under the lower courts' interpretation of the language in Paragraph 1(a), employees fired by Credible would not be required to repay any amount of the loan, whereas, an employee who quits his or her job at Credible would be required to repay the loan in accordance with the

- 16 -

percentages listed in Paragraph 1(a). We see no reason why, under the promissory note, an employee who is fired should be treated more favorably than one who quits. Accordingly, the lower courts' interpretation of the promissory note engenders disparate treatment of Credible's employees by treating employees who are fired more favorably. As demonstrated, the resulting distinction is untenable and runs contrary to common sense.

Second, Paragraph 4(c) of the promissory note contains a "Drop/Fail Repayment" clause. Pursuant to this provision, if a borrower drops or fails a class, it is construed as an event of default under the promissory note, and the borrower is required to pay the portion of the loan attributable to that class within thirty days. It is contrary to our common sense approach that, under the promissory note, an employee would be required to pay back funds for a class he or she dropped or failed but would not be required to repay any portion of the loan if he or she was fired. Essentially, if Mr. Johnson's interpretation of Paragraph 1(a) controlled, then any employee who expected he or she may fail his or her classes could simply act in a manner that would compel Credible to fire the employee. Accordingly, under this interpretation, an employee could act unilaterally to circumvent the "Drop/Fail Repayment" provision of the promissory note. In summation, given the context of the promissory note and the overarching intent of the parties in entering into the agreement, it is clear that the lower courts' and Mr. Johnson's interpretation of the promissory note runs contrary to common sense. Although two interpretations can be given to the language of Paragraph 1(a), only one of those—that advanced by Credible—is reasonable in our view.

Moreover, even if we were to adhere to Mr. Johnson's interpretation, *i.e.*, that Paragraph 1(a) only applies in situations where an employee quits, we would construe

conflicting contractual provisions "to effectuate the intention of the parties as collected from the whole instrument, the subject matter of the agreement, the circumstances surrounding its execution, and its purpose and design." *Canaras v. Lift Truck Servs., Inc.*, 272 Md. 337, 351–52, 332 A.2d 866, 874 (1974) (citing *Lumber Co. v. Bldg. & Sav. Ass'n*, 176 Md. 403, 407, 5 A.2d 458, 460 (1939)). Further, "if reconciliation can be effected by a reasonable interpretation, such interpretation should be given to the apparently repugnant provisions, rather than nullify any." *Id.* at 352, 332 A.2d at 874. Mr. Johnson urges this Court to nullify the substance of the final part of Paragraph 1(a) rather than effectuate a reasonable interpretation that harmonizes the two provisions—a result that runs contrary to our tenets of contract interpretation.

In sum, Credible's interpretation of the promissory note is the only reasonable interpretation of the two competing interpretations advanced. Indeed, Credible's interpretation of the note is in accord with our common sense approach to contract interpretation. Further, out of the two interpretations, Credible's is the only interpretation of the promissory note that harmonizes the substance of Paragraph 1(a) with the remaining provisions of the note. Moreover, our review of the promissory note, as a whole, including its context and the underlying intent of the parties, evinces that the parties intended the loan to be repaid regardless of whether the employee quits or is fired by Credible. Any contrary construction is ill-founded based on the promissory note's context and the practical consequences of such a construction.

Additionally, Mr. Johnson contends that this Court must construe any inconsistency in the promissory note against Credible, its drafter. This argument is misapplied in two

- 18 -

respects. First, a contract will be "most strongly construed against" its drafter when a court finds the contractual terms at issue to be ambiguous. *Prima Paint Corp. v. Ammerman*, 264 Md. 392, 395, 287 A.2d 27, 28 (1972) (citing *Kelley Const. Co. v. Washington Suburban Sanitary Comm'n*, 247 Md. 241, 250, 230 A.2d 672, 678 (1967)).

Here, neither party contends that the language of Paragraph 1(a) or the promissory note in general is ambiguous. We were able to ascertain the parties' intentions by reviewing the promissory note as a whole in its appropriate context. As demonstrated *supra*, out of the two interpretations advanced, Credible's interpretation is reasonable and Mr. Johnson's is not. Therefore, the promissory note is not ambiguous. As evident, the prerequisite for the application of this tenet—ambiguity—is absent in the instant appeal. Therefore, we need not construe the promissory note against Credible.

Lastly, Credible argues that Mr. Johnson waived any right to challenge the promissory note by entering into a payment plan under which he would repay the principal balance of the loan and by making only one payment under the plan.[7] In response, Mr. Johnson argues that Credible should be precluded from raising this argument by virtue of Md. Rule 8–131(a), because Credible did not present this argument before the courts below. Although this Court has the discretion to entertain issues for the first time on appeal in certain instances, we need not consider this dispute because we hold that, under the terms of the promissory note, Mr. Johnson was required to repay the principal balance.

---

[7] In its opening brief, Credible provides the Court with a fourth question presented, "[d]id [Mr.] Johnson waive his right to contest the Note's enforceability by paying the first installment in the parties' agreed payment plan?" This question, however, was absent from Credible's petition for writ of certiorari. We do not reach it.

**CONCLUSION**

In summation, pursuant to Rule 7–113(f), on appeal from the district court, a circuit court reviews the district court's legal conclusions *de novo*. The interpretation of a contract is a legal conclusion, and the circuit court erred by applying the clearly erroneous standard to the district court's interpretation of the promissory note. Based on the plain language of the promissory note, supplemented by contextual indicators and common sense, the circuit court also erred in construing the promissory note to require repayment only in situations where an employee quits. Therefore, we reverse the judgment of the Circuit Court for Montgomery County.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS REVERSED. COSTS TO BE PAID BY RESPONDENT.**