*Davon Muhammad v. Prince George's County Board of Education*, No. 401, September Term, 2019. Opinion by Wells, J.

**LABOR & EMPLOYMENT — EMPLOYEE STATUS — CONTRACTS**

Teacher who signed a provisional contract and underwent training in preparation for the school year, but had not started teaching, was an employee of the county board of education.

**LABOR & EMPLOYMENT — BREACH OF CONTRACT — CONTRACT TERMS**

Circuit court properly denied teacher's request to alter or amend judgment where county board of education tendered a check to teacher for settlement of teacher's breach of contract suit and State and federal withholding taxes were deducted.

**SETTLEMENT AND RELEASE — CONFIDENTIAL TERMS — COURT'S REVIEW**

Circuit court did not err in reviewing parties' settlement agreement, despite a confidentiality clause, where the agreement stated that the court would resolve any dispute concerning the agreement. Further, absent such language, a court, as a dispassionate legal referee, may determine what should and should not be considered in a given controversy.

Circuit Court for Prince George's County
Case No. CAL 16-42259

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 401

September Term, 2019

_____

DAVON MUHAMMAD

v.

PRINCE GEORGE'S COUNTY BOARD OF
EDUCATION

_____

Kehoe
Leahy,
Wells,

JJ.

_____

Opinion by Wells, J.

_____

Filed:  June 1, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

On November 18, 2016, appellant, Davon Muhammad, filed suit against Prince George's County Public Schools ("PGCPS") and appellee, Prince George's County Board of Education ("the Board"), alleging a breach of the parties' employment contract. At an April 3, 2018 settlement conference, the Board agreed to pay Muhammad $33,500.00 for full and final settlement of all of Muhammad's claims which was documented in a written agreement reached during an alternative dispute resolution session. This agreement was incorporated into a court order and filed with the court clerk. Later, the parties signed a more detailed document entitled, "Settlement Agreement and Release." Thereafter, the Board sent Muhammad a check for the agreed upon amount, with applicable state and federal tax withholdings withheld, for a total of $20,569.00.

Muhammad rejected the check, claiming that the Board had not paid him the full amount agreed upon and moved to vacate the judgment, or in the alternative, to enforce the court's order. The court denied the request. Muhammad then filed a motion to alter or amend, which the court also denied.

Muhammad appeals from the circuit court's denial of his motion to vacate and asks the following questions, which we restate verbatim:

1. Did the trial court err by allowing the Board to reduce its settlement payment to Muhammad by $12,951.00 by classifying Muhammad as an employee even though the Board never permitted Muhammad to work as an employee under the teaching contract?
2. Did the trial court err by considering information contained in the confidential release, even though the confidential release states on its face that it "will not be disclosed to any person or entity, except any person or entity that is statutorily required to have such knowledge"?

We hold that the circuit court did not err in finding Muhammad was an employee of the Board at the time of his termination. Further, the amount Muhammad received from the Board to resolve his breach of contract suit was consistent with the terms of the settlement agreement reached. Additionally, although Muhammad insists otherwise, the circuit court properly reviewed the settlement agreement in rendering its decision. We therefore affirm.

## BACKGROUND

Davon Muhammed began his career with the Prince George's County Board of Education ("the Board") in September 2012, working as a substitute teacher and athletic coach. In early July 2016, a human resources representative for Prince George's County Public Schools (PGCPS) informed Muhammad that he would not be retained for the 2016-2017 school year.

In what seemed to be a reversal of that decision, on July 13, 2016 the principal of Walker Mill Middle School, Dr. Nicole Clifton, offered Muhammad a position as a health education teacher subject to a certification review. One week later, on July 20, 2016, an Instructional Staffing Specialist at PGCPS informed Muhammad that, although he was 42 credits shy of a full certification, he could be provisionally approved for a teaching position if the county supervisor for his subject area provided her recommendation. The next day, the county health education supervisor approved Muhammad as a health education teacher.

On July 27, 2016, Muhammad signed a "Provisional Contract for Conditional or Resident Teacher Certificate Holders," ("contract") for the 2016-2017 school year, which

2

was also signed by Kevin M. Maxwell as the Secretary of the Board. The contract expressly stipulated,

> If any of the conditions of this contract shall be violated by the certified employee named herein, salary already accrued will be forfeited, in the discretion of the Local Board of Education. The Local Board of Education, pursuant to the provisions of § 6-202 of the Education Article of the Annotated Code of Maryland, as amended, may suspend or dismiss the employee at any time, upon the recommendation of the Local Superintendent . . . .
>
> \* \* \*
>
> Anything to the contrary notwithstanding, this contract shall terminate if the employee ceases to hold or fails to comply with the requirements for maintaining a teacher's Conditional or Resident Teacher Certificate. However, if the employee is provided a Professional Certificate during the school year for which the contract is in effect, the employee's employment shall continue to be governed by the terms of this contract until its June 30th termination date. [. . .]

The contract was to take effect on August 15, 2016.

In preparation for the upcoming school year, Muhammad attended three days of training at Dr. Henry A. Wise, Jr. High School on August 8, 9, and 10, 2016; three days of professional development on August 15, 16, and 18; and one day of professional development for health education on August 17.

Muhammad finished his last day of professional development on August 18, 2016. The same day, Dr. Clifton informed Muhammad that, in fact, he would not be working with PGCPS in any capacity for the 2016-2017 school year.

Muhammad subsequently sued the Board for breach of contract, seeking $75,000.00 in compensatory damages. At an alternative dispute resolution ("ADR") meeting held on April 3, 2018, the parties agreed that Muhammad would dismiss his claims against the

3

Board in return for $33,500.00. This ADR agreement was a simple statement that the case was resolved; Muhammad would drop his lawsuit and in return he was to receive the agreed upon sum. The parties signed the ADR agreement and submitted it to the circuit court. The court docketed Muhammed's case as settled by agreement.

Later, the parties signed a document entitled, "Settlement Agreement and Release" ("settlement agreement"). The first paragraph of the settlement agreement reads: "The Board shall pay and Muhammad accepts, as full and final settlement of the above-referenced litigation, the amount of Thirty Three Thousand Five Hundred Dollars, ($33,500.00), *less applicable required State and Federal tax withholding*, as full and final settlement of all claims." (emphasis supplied). It further states that "Muhammad expressly acknowledges that this General Release includes, but is not limited to, matters specifically complained of and involving the litigation[,] his intent to release the Board from any claim relating to his employment from the Board, or arising from the above-referenced litigation . . . ." The parties also incorporated a confidentiality clause, mandating that the terms of the agreement "will not be disclosed to any person or entity, except any person or entity that is statutorily required to have such knowledge." Muhammad signed the settlement agreement on April 30, 2018. A representative of the Board signed the document on May 3, 2018.

Soon thereafter, the Board sent Muhammad a check in the amount of $20,569.00, reflecting the deduction of $12,931.00 in state and federal tax withholdings. Muhammad, through his attorney, refused to accept the check, and, instead, requested that the Board send a replacement check for $33,500.00 or provide legal authority for the tax

4

withholdings. The Board declined to provide another check, insisting that Muhammad was paid consistent with the agreement. Muhammad then filed a motion to vacate the settlement agreement and requested the court reset the case on the trial docket, or, in the alternative, order the Board to pay him $33,500.00.

On March 19, 2019, the Circuit Court for Prince George's County held a hearing on Muhammad's motion to vacate. Muhammad argued that he was never a PGCPS employee because "he was never permitted to work day one as a teacher" despite the parties' signed employment contract. In response, the Board argued that Internal Revenue Service (IRS) required that it withhold applicable federal and state taxes from settlement proceeds paid on back pay. The fundamental question for the circuit court was to determine whether, at the time of the contract's termination, Muhammad was an employee of the Board. At the end of the hearing, the circuit court ruled as follows:

> Plaintiff was never hired as – or never worked as a teacher. And there was a complaint filed. An amended complaint was then filed, and the amended complaint referenced the situation as to how Mr. Muhammad entered into that employment contract with Prince George's County Public School System. That while they are seeking money damages, the reference was for money that would have been received had he [been] permitted to teach and coach for the school year, pay increase, and as well as any and all employment benefits. So the breach of contract was based on [the Board's] . . . failure to fulfill the employment contract that was entered in.

> \* \* \*

> And so on April 3rd, 2018, a settlement agreement and release was signed by both parties. . . . And the plain terms . . . was [sic] that the Board shall pay Muhammad full and final settlement of [$33,500], less applicable required state and federal tax withholding.

> While it is true that the County cannot just arbitrarily impose taxes, one exception is if a person is an employee. The underlying basis of this complaint was that the Defendant did not honor the employment contract. It

5

was about Plaintiff being employed as a teacher. It was the monetary award that was sought was based on the salary and income that could have been earned as a teacher and as a coach along with any cost-of-living increase or adjustment that is made.

So the court will find that at the time that the parties entered into the agreement, based on the underlying employment contract, that there was an employer-employee relationship between Davon Muhammad and Prince George's County Public School System.

Additionally, with respect to consummating this settlement agreement and release, which obviously is much more detailed than the few lines that are listed on the order that the parties have reached an agreement and the final agreement that was signed by the Plaintiff and the School, is that this would encompass state and federal taxes. So this was in compliance with what the parties had bargained for. This was in compliance with the settlement agreement that the parties have reached, as Mr. Muhammad was an employee. At that time, the taxes were properly taken out. . . .

With these findings, the court denied Muhammad's motion to vacate or, in the alternative, enforce the settlement agreement. Muhammed filed a timely appeal. Additional relevant facts will be discussed, as needed.

## DISCUSSION

### I. The Circuit Court Properly Found Muhammad Was an Employee of the Board at the Time of Termination

Muhammad contends that the circuit court erred in denying his motion to vacate, or in the alternative, to enforce the settlement order when it classified him as an employee of the Board. Muhammad reasons that because the Board terminated the employment contract before the school year began, in other words before Muhammad began teaching, he was never an employee, and the Board, therefore, illegally withheld payroll taxes. He argues if the court determined that he was the aggrieved party to a contract breach, rather

6

than an employee, then the court would have found that the Board should have paid him exactly $33,500.00. We disagree.

We review a trial court's ruling on a motion to alter or amend a judgment under Maryland Rule 2-534 and on motions to revise judgments under Maryland Rule 2-535 for abuse of discretion. *Harrison-Solomon v. State*, 442 Md. 254, 265 (2015); *Peay v. Barnett*, 236 Md. App. 306, 315-16 (2018). However, our review of a trial court's interpretation of a contract, including a contract for employment and a settlement agreement, is a question of law and is subject to a *de novo* standard of review. *Myers v. Kayhoe*, 391 Md. 188, 198 (2006); *Sy-Lene of Washington, Inc. v. Starwood Urban Detail II, LLC*, 376 Md. 157, 163 (2003); *Grant v. Kahn*, 198 Md. App. 421, 428 (2011).

Preliminarily, we must determine whether Muhammad was an employee under the parties' contract, requiring tax withholding on the settlement award pursuant to Internal Revenue Code § 3402(a)(1), 26 U.S.C. §3402(a)(1). This section states that "every employer making payment of wages shall deduct and withhold upon such wages a tax determined in accordance with the computational procedures prescribed by the Secretary." *Id.* Wages, as determined by the tax code and regulations adopted by the Internal Revenue Service, are defined as "all remuneration for employment," except those monies expressly excepted. *Id.* § 3121(a); Wages, 26 C.F.R. § 31.2121(a)(1). "Remuneration for employment" includes wages irrespective of their designation and also encompasses wages even if the employer-employee relationship no longer exists at the time remuneration is paid. 26 C.F.R. § 3121(a)-1(c)(i); *see Newhouse v. McCormick & Co., Inc.*, 157 F.3d 582, 585 (8th Cir. 1998). Employment is further defined as "any service, of whatever nature,

7

performed . . . by an employee for the person employing him." 26 U.S.C. § 3121(b). Simply, an employee is "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." *Id*. at § 3121(d). "The plain language of these statutes indicates the importance of demonstrating an employer-employee relationship in order to label an award as wages for purposes of triggering the withholding requirement." *Newhouse*, 157 F.3d at 585.

The Court of Appeals has consistently held that "the question whether an employer-employee relationship exists is one for the [fact-finder] to determine." *Mackall v. Zayre Corp.*, 293 Md. 221, 230 (1982). An employer-employee relationship exists "when the servant is subject to the master's control." *Perry v. Asphalt & Concrete Services, Inc.*, 447 Md. 31, 49 (2016). As such, an employment relationship exists "only when the employer . . . retains the right to direct the manner in which the work or business is done, as well as the result to be accomplished; in other words, not only what must be done but also how it must be done." Md. Enc. Employment § 4 (9th ed. 2020) (citing *Mackall v. Zayre Corp.*, *supra*; *Clemons v. E. & O. Bullock, Inc.*, 250 Md. 586 (1968)).

The Court of Appeals has established a five-factor test to determine whether an employer-employee relationship exists: "(1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer." *Uninsured Employers' Fund v. Tyson Farms, Inc.*, 243 Md. App. 406, 416 (2019), *cert. granted*, March 11, 2020 (citing *Mackall v. Zayre Corp.*, *supra*, 293 Md. at 230). "'Of the five factors, the factor of *control* stands out as the most important.'" *Id*. (citing *Whitehead*

8

*v. Safway Steel Products, Inc.*, 304 Md. 67, 78 (1985)) (emphasis in *Uninsured Employers' Fund*).

As we see it, under the five-factor *Mackall* test Muhammad was a PGCPS employee. It is undisputed that the Board, through their agents, had the power to select and hire Muhammad as a teacher. According to the provisional employment contract the parties signed, it is also undisputed that the Board had the power to discharge Muhammad. Further, the Board was responsible for paying Muhammad's salary. Most importantly, we conclude that the Board held sufficient control over Muhammad to create an employer-employee relationship per the fourth and fifth *Mackall* factors. The Board exercised enough control over Muhammad such that he attended teaching in-service meetings in preparation of his new role. Although the record is devoid of such testimony, it defies reason that one would attend these meetings unless one was considered an employee of the Board. Additionally, it is difficult to imagine that the Board would permit a non-employee to attend such meetings, because as the record reveals, in-service teaching days are specifically intended to prepare teachers for the upcoming school year. On the record before us, it is evident that Muhammad was, in fact, a Board employee.

Nonetheless, Muhammad insists that the Eighth Circuit Court of Appeals' opinion in *Newhouse, supra,* supports his contention that he was not an employee at the time the Board allegedly breached the settlement agreement. In *Newhouse*, the appellant worked for McCormick & Company, Inc. ("McCormick") as a spice salesman for approximately 23 years before McCormick eliminated his position in 1987. 157 F.3d at 583. In 1992, Newhouse reapplied for employment with McCormick, but this time as a sales

representative. *Id.* However, McCormick denied him employment due to his age. *Id.* Based on provisions in the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 (1994), and the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age, Neb. Rev. Stat. §§ 48-1001 [through] 48-1010 (Reissue 1993), a jury awarded Newhouse damages that included back pay, front pay, and liquidated damages. *Id.* at 583-84. Ultimately, the district court entered judgment for $59,426.76 in back pay, $84,062.00 in front pay, and $59,426.76 in liquidated damages.[1]  157 F.3d at 584.

In fulfilment of the judgment award, McCormick tendered two separate checks to Newhouse. *Id.* The first check, totaling $88,567.19, according to McCormick, was to go towards the back and front pay awards, minus state and federal payroll tax. *Id.* The second check, in the amount of $111,799.56, served to satisfy the liquidated damages award, the award of attorney's fees, taxable costs, and interest. *Id.* However, Newhouse refused to accept the checks because the total amount "did not tender the full amount of the judgment." *Id.* McCormick filed a motion under Fed. R. Civ. P. 60(b)(5) to relieve it from the judgment, arguing that it tendered full payment. *Id.* The district court denied the motion, finding that McCormick, as a judgment debtor, could not "unilaterally reduce the

---

[1] McCormick appealed the initial judgment, arguing, among other issues, that the trial court "abused its discretion by choosing front pay in lieu of reinstatement as the appropriate form of equitable relief and by submitting the issue of front pay to the jury." *Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 641 (1997). The Eighth Circuit upheld the award on appeal but remanded the case to the district court with directions to recalculate front pay after holding that the issue of front pay should not have been submitted to the jury. *Id.* at 644.  Upon remand, the district court entered judgment in the amount stated *supra*. *Newhouse*, 157 F.3d at 584.

amount of the judgment on the basis of the judgment holder's potential income tax liability." *Id.*

On appeal, the Eighth Circuit sought to answer the question of "whether Newhouse's front and back pay awards constitute[d] 'wages,' thus triggering a withholding requirement on the part of McCormick." 157 F.3d at 584-85. In affirming the district court's ruling, the Eighth Circuit determined that, for purposes of §§ 3402(a)(1), 3121(d) of the Internal Revenue Code, Newhouse was not an employee of McCormick as of the date that he filed suit. *Id.* at 585 ("The plain language of these statutes indicates the importance of demonstrating an employer-employee relationship in order to label an award as wages for purposes of triggering the withholding requirement.") As the court reasoned, Newhouse sought remedies that "did not include being given the job for which he applied[.]" *Id.* Rather, so the court held, Newhouse "became a judgment creditor by receiving a judgment including awards of front and back pay which represent the wages he would have earned *if* he would have been hired." *Id.* at 585 (emphasis in original). "Thus, at the time of the discrimination from which the judgment in this case arose, Newhouse had no employer-employee relationship of any type with McCormick." *Id.*

Muhammad's reliance on *Newhouse* is unavailing for multiple reasons. First, Eighth Circuit decisions are non-binding precedent on Maryland courts. Second, and more importantly, the facts of *Newhouse* can be easily distinguished from the facts here. To begin, while Newhouse was at one time an employee of McCormick (until 1987), at the time he brought suit, he was a rejected job applicant. Unlike the Board, McCormick did not orally or in writing offer Newhouse a position; unlike the Board and Muhammad,

11

McCormick and Newhouse did not sign an employment contract; nor did Newhouse participate in any activity with or for McCormick that could be construed as employment. Conversely, the Board did indeed hire Muhammad, as evinced by the signed employment contract dated July 27, 2016. This contract specifically provided "the term of this contract shall extend from *the date of this signing* until the thirtieth day of June . . . ." (emphasis supplied). Therefore, at the earliest, Muhammad was an employee on July 27, 2016. Under the most conservative estimate, however, Muhammad began his employment on the date of appointment. According to the contract, Muhammad "agree[d] to abide by the terms and restrictions of this contract and accept[ed] said appointment to take effect on the 15[th] day of August 2016." Both of these dates, then, predate the date on which the Board notified Muhammad that it would be cancelling the employment contract, which took place on August 18, 2016. Muhammad, then, was indeed an employee of the Board at the time of the contract's termination.

Given that we agree with the circuit court's finding that Muhammad was an employee for purposes of the employment contract, we similarly hold that the Board correctly withheld state and federal taxes from the settlement award. *See* 26 U.S.C. § 3402(a)(1). Consequently, we conclude that the circuit court did not err in denying Muhammad's motion to alter or amend, or, alternatively, to vacate the judgment.

II. **The Circuit Court Did Not Err by Reviewing the Settlement Agreement and the Confidential Release**

Muhammad maintains that the court erred in reading the settlement agreement and, therefore, reversal is required. Muhammad claims that this was error because the

settlement agreement contains a confidentiality provision which forbade even the circuit court from reviewing its contents. Muhammad is incorrect.

Paragraph 5 of the parties' Settlement Agreement and Release states, in pertinent part: "The Parties agree that the terms, provisions and conditions of this Agreement are strictly confidential and *will not be disclosed to any person or entity, except any person or entity that is statutorily required to have such knowledge*." (emphasis supplied). Essentially, Muhammad argues that this provision forbade the circuit court from not only receiving the document into evidence at the hearing, but from also reading it. Muhammad claims error because the court improperly considered paragraph 1 of the settlement agreement, which states that, "[t]he Board shall pay and Muhammad accepts, as full and final settlement of the above-referenced litigation, the amount of Thirty Three Thousand Five Hundred Dollars, ($33,500.00) *less applicable required State and Federal tax withholding*, as full and final settlement of all claims." (emphasis supplied). Muhammad asserts had the court not viewed this provision, it would have been left only with the ADR agreement and the subsequent order, neither of which referred to a withholding State and federal taxes on the settlement amount. Consequently, so Muhammad argues, the court would have determined that the Board improperly withheld those taxes and owed Muhammad exactly $33,500.00.

"Generally, Maryland courts subscribe to the objective theory of contract interpretation." *Credible Behavioral Health, Inc. v. Johnson*, 466 Md. 380, 393 (2019) (citation omitted). The "primary goal of contract interpretation," then, is to determine the intent of the parties upon their entering the agreement "and to interpret the contract in a

13

manner consistent with [that] intent." *Id.* (citations and quotation marks omitted). Where the contract language is unambiguous, courts determine the intent of the parties based on an objective, reasonable person standard. *Id.* This standard accounts for "what a reasonable person in the position of the parties would have understood the language to mean and 'not the subjective intent of the parties at the time of formation.'" *Id.* at 393-94 (internal citations omitted). Ultimately, "[t]he cardinal rule of contract interpretation is to give effect to the parties' intentions." *Tomran, Inc. v. Passano*, 391 Md. 1, 14 (2006) (citing *Owens-Illinois, Inc. v. Cook*, 386 Md. 468, 497 (2005)). "[U]nless the written language is not susceptible of a clear and definite understanding[,]" the terms of the contract "govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract." *Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37 (2013) (citing *Slice v. Carozza Properties, Inc.*, 215 Md. 357, 368 (1958)).

Muhammad reasons that the confidentiality agreement is "susceptible of a clear and definite understanding," in terms of who is entitled to review the settlement agreement. He argues because paragraph five does not expressly permit "a judge in connection with a pending motion" to review the settlement agreement, it must necessarily exclude the court from reviewing the document at all. He also posits that paragraph five explicitly limits disclosure only to those who are "statutorily required to have such knowledge," and that neither the Board nor the trial court cited any statute giving the trial court such authority to review.

14

Contracts must be read and construed in their entirety. *Dumbarton Improvement Ass'n*, 434 Md. at 52. "[I]f reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Id.* (citing *Sagner v. Glenangus Farms, Inc.*, 234 Md. 156, 167 (1964)). With that understanding, we must look to the other provisions of the parties' Settlement Agreement. "Paragraph 6" of the agreement expressly mandates that "this Agreement contains and comprises the entire agreement and understanding of the Parties, that there are no additional promises or terms of the Agreement among the parties *other than those contained herein*[.]" (emphasis added). Further, "Paragraph 7" states that, "The Parties agree that the state courts of the State of Maryland will have sole and executive jurisdiction and venue to hear and determine *any dispute or controversy arising under or concerning this Agreement*." (emphasis added). And "Paragraph 8" reiterates basic tenets of contract interpretation, dictating that "[t]he language of all parts of this Agreement will in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either of the Parties."

Taken as a whole, the settlement agreement cannot stand for what Muhammad claims. Paragraph 7 expressly states that the courts of Maryland, which include the Circuit Court for Prince George's County, have "sole and executive jurisdiction and venue" over *any* dispute or controversy concerning the settlement agreement. It would be illogical, as Muhammad argues, that Paragraph 5 would not legally authorize a Maryland court to review the agreement. We must read the provisions of a contract to complement one

15

another. *Dumbarton Improvement Ass'n*, 434 Md. at 52. It also cannot reasonably be argued that Paragraph 5 serves as a means of limiting, or nullifying a court's broad jurisdiction, which the agreement unambiguously provides in Paragraph 7.

Perhaps more importantly, it is precisely the court's responsibility, when sitting as the fact-finder, to review all evidence in rendering a decision. *See Polk v. State*, 183 Md. App. 299, 306-07 (2008) ("[The judge] is ultimately, of course, the fact finder replacing the jury in that role. He is also, however, the legal referee, sometimes determining what he is permitted to consider as a fact finder and what he is not permitted to consider.") In that role, "[w]e trust the judge to compartmentalize," *id.* at 608, and properly apply the law to the facts. On this basis alone, we cannot see how it was improper for the court to review the settlement agreement.

Moreover, if Paragraph 6 is to be given its full effect, then Muhammad's argument that the parties and the trial court should have solely been bound to the ADR agreement is incorrect. Paragraph 6 expressly and unambiguously provides that the settlement agreement is the entire agreement of the parties. This language essentially forbids a court from looking outside of the settlement agreement to determine the agreement's terms when the terms are unambiguous, as they are here. *See Dynacorp Ltd. v. Aramtel Ltd.*, 208 Md. App. 403, 469 (2012) ("When interpreting a contract to determine its meaning, appellate courts focus 'on the four corners of the agreement'"). This provision, in practice, renders the ADR agreement void, and replaces that agreement with the comprehensive settlement agreement and release the parties signed in April 2018. Had Muhammad wanted the settlement agreement to reflect different terms, then he was free to have bargained for them.

16

*Stickley v. State Farm Fire and Cas. Co.*, 431 Md. 347, 366 (2013) ("As a general rule, parties are free to contract as they wish"); *CAS Severn, Inc. v. Awalt*, 213 Md. App. 683, 693 (2013) ("It is well-settled that under the principles of freedom of contract, parties have the broad right to construct the terms of the contracts they enter into as they wish, providing the contract is neither illegal nor contrary to public policy." (cleaned up) (internal citations omitted)).

For the sake of argument, had we concluded that the circuit court had no authority to review the settlement agreement, the court still could have found that Muhammad was an employee. That determination could have been made from facts outside of the settlement agreement, such as by examining the employment contract and testimony about the nature of the relationship between Muhammad and the Board. The circuit court's review of the settlement agreement was not necessary for the court to determine that Muhammad was an employee. As we perceive no error, we affirm.

**THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY IS AFFIRMED. APPELLANT TO PAY THE COSTS.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0401s19cn.pdf